BLACK HILLS NAT'L BANK OF RAPID CITY v. KELLOGG *et al.*

1. The knowledge of the cashier of a bank as to the defenses and equities existing against a promissory note made to him in his individual capacity, and by him transferred to the bank of which he is such cashier upon its maturity, is the knowledge of the bank; and a renewal of such note by the makers in the name of the bank, at the request of such cashier, and the surrender of the original note after its maturity, does not constitute a new consideration for such renewal note, and will not preclude the makers from interposing any defense to the renewal note that could have been made to the original note in the hands of such cashier.

2. One who has contracted for the purchase of a certain tract of land cannot be required to accept a deed for the same, when the vendee has no title reasonably free from doubt to one-half of the same. Before such vendee can be required to accept the land, the vendor must be able to convey all, or substantially all, the land he has contracted to sell, by a title reasonably free from doubt.

3. An action on a joint and several obligations against two defendants, only one of whom appeared and answered in the action, can be tried, and verdict and judgment rendered for or against the party answering, without regard to the proceedings against his codefendant, who failed to appear in the action; and such trial, verdict and judgment, without reference to such codefendant, will be regular and proper.

4. Evidence, in the absence of fraud, is inadmissible to vary, change or qualify the terms of a written contract appearing upon its face to be

executed by a party as principal, by showing that such party was acting as agent of the other parties to the contract, as between the parties to the contract.

(Syllabus by the court.    Opinion filed Nov. 24, 1893.)

Appeal from circuit court, Pennington county.    Hon. WILLIAM GARDNER, Judge.

Action upon a promissory note.    From a judgment for defendant Washabaugh, and an order denying a new trial, plaintiff appeals.    Affirmed.

The facts are fully stated in the opinion.

*Schrader & Lewis*, for appellant.

When the defendants gave to plaintiff their renewal note and obtained from it not only an extension of time on the debt for six months, but also the surrender of the first note with Hall's indorsement thereon to the bank, that was a valid consideration for the execution of the same, no matter what were the equities between Hall and the defendants on the first note. Bromley v. Hawley, 12 At. 220; Churchill v. Bradley, 5 At. 189; Whitney v. Clary, 13 N. E. 393; Wilton v. Eaton, 127 Mass. 174.    By giving the note in suit to the plaintiff the defendants waived as between them and plaintiff the defense against Hall of failure of consideration to the first note.    1 Dan. Neg. Inst. § 205; Gill v. Morris, 11 Heisk 614; Keyes v, Mann, 63 Ia. 560.

Where there are several defendants all served, final judgment against one or more cannot be entered without disposing of the case as to all.    Bissell v. Cushman, 5 Col. 76; Kimball v. Farmer. 63 Ill. 519; Faulk v. Kellems, 54 Ill. 191; Shultz v. McLean, 18 Pac. 775; Dow v. Rattle, 12 Ill. 373; Blodgett v. Morris, 14 N. Y. 483; Beatty v. O'Connor, 27 N. E. 446.

Counsel for appellant advanced the same argument, and cited the same authorities upon the questions of agency and title to the land, as in the case of Washabaugh v. Hall, 4 S. D.

*G. C. Moody* and *J. W. Fowler*, for respondents.

CORSON, J.   This was an action to recover the principal and interest claimed to be due on a promissory note executed by the respondent and one Kellogg to the plaintiff.   The defendant Kellogg did not answer, and the respondent served a separate answer, in which he set up in substance, as a defense, that the note in controversy was the renewal of a note executed by himself and said Kellogg to H. S. Hall, and that the only consideration for said note was an agreement executed by said Hall, of which the following is a copy:  "Rapid City, Dakota, December 30, 1885.   Received of Frank J. Washabaugh the sum of five hundred dollars cash, and his promissory note for the sum of five hundred dollars, bearing even date herewith, and drawing interest at the rate of ten per cent per annum, which said cash and note are full payment for a 1-16 interest in and to the southwest $\frac{1}{4}$ of section 25, township 2 north, range 7 east, B. H. M., provided Herbert S. Hall, to whom the cash is paid and the note is delivered, shall perfect title to same above-described lands in himself within sixty days from the date hereof; otherwise to be refunded and returned to the said F. J. Washabaugh.   H. S. Hall."   That said Hall has failed and neglected to obtain a good title to the property described in the said contract, and to convey the same to the respondent.   That demand has been duly made upon said Hall for the performance of the contract on his part, and that he has neglected and refused to perform the same.   That said Hall was, at the time of the execution of said original note and contract, cashier of said plaintiff bank, and was such cashier when the renewal note was executed, and that he transacted the business as such cashier in taking the renewal note sued on in this action, and that, by reason thereof, the said bank had full notice of all the facts relating to the execution of said note and contract.   A trial was had before a jury, and a verdict in favor of the respondent was directed by the court.   A motion for a new trial was made and denied, and judgment was thereupon entered in

favor of said respondent. From the judgment and order denying the motion for a new trial the plaintiff appeals.

The record discloses the fact that the original note was executed to said H. S. Hall in consideration of the stipulations in the agreement executed by him; that the said original note was transferred to the bank by Hall, indorsed by him; and that, as such cashier, he procured the respondent to execute the renewal note in the name of the bank as payee, and that he, as such cashier, surrendered up the original note held by the bank. It further appears that 80 acres of the land described in the contract was patented by the United States to one J. Carlos Stevens, an orphan minor of Silas B. Stevens, deceased, and that the only title that Hall had to the said 80 acres was by deed from the guardian of said minor, by her attorney in fact, and which respondent claims was insufficient as a deed of conveyance of said minor's interest, and was made without the authority of any court having jurisdiction over the estate of said minor. A large number of errors are assigned, but, as the counsel for the appellant have stated in their brief the points upon which they rely for a reversal, it will not be necessary to set out in full the errors assigned.

1. The learned counsel for the appellant contend that when the respondent and Kellogg executed the renewal note to the plaintiff, and obtained from the plaintiff an extension of time and a surrender of the original note, indorsed by Hall, they received a valid consideration for the renewal note, without regard to any equities between Hall and the respondent on the original note. Possibly this would be true where a new note was given by a third party upon the surrender of an existing note, and there is no question as to the nature of the transaction between the original parties, notice, etc. Such was the case of Wilton v. Eaton, 127 Mass. 174, cited by counsel for appellant. In that case defendant's intestate had executed a note to the plaintiff, and the defendant had taken it up, and given a new note executed by herself. It was held that the surrender-

ing up of the old note was a sufficient consideration for the new note.   The cases of Whitney v. Clary, (Mass.) 13 N. E. Rep. 393; Churchill v. Bradley, (Vt.) 5 Atl. Rep. 189; and Bromley v. Hawley (Vt.) 12 Atl. Rep. 220,—cited by the counsel for the appellant, were decided upon similar principles.   But in these cases the only question involved was whether or not the surrender of the old note was a sufficient consideration for the new one, as between the holder and another party, not the original maker.   In the case at bar, however, a very different question is presented.   It appears that Hall, the payee in the original note, was the cashier of the bank, and transacted all the business pertaining to the renewal of the note to the bank, as such cashier.   His knowledge of the contract and of its terms, upon which the note was executed, was the knowledge of the bank. Stebbins v. Lardner, (S. D.) 48 N. W. Rep. 847; Farmers' & Traders' Bank v. Milling Co., (S. D.) 47 N. W. Rep. 402.   In First National Bank v. Town of New Milford, 36 Conn. 93, the doctrine as to knowledge of the cashier being the knowledge of the bank is clearly stated.   In that case the cashier was town treasurer of the defendant town, and, as such treasurer, he executed a note in behalf of the town, which by custom he was authorized in certain cases to make, and discounted it as cashier of the bank and with bank funds, but applied the money to his own use.   The bank brought suit against the town to recover the amount of the note, and it was held that the bank could not recover.   The court (BUTLER, J.) says: "Assuming, however, that there was a contract of loan, it was made by Conklin as agent of the town, with Conklin as agent of the bank.  If Conklin, as agent of the town, had applied to the directors for a loan offering the note, and telling them he had drawn it, not for the benefit of the town, but for his own benefit, without consulting the officers of the town, and when there was a sufficient supply of money in the treasury, it must be conceded that the board would, in making the loan, have been *particeps criminis* in the fraud, and the bank could not recover in this action.   We can-

not perceive that that case would differ from this. The contract, if any ·was made, was made by Conklin on behalf of the bank. No other mind but his met the mind of the agent of the town in making the contract. He, as as agent of the bank, had full knowledge, therefore, of the fraud; and now the bank, if they ratify his contract, and confirm his agency, must accept his knowledge, and be bound by it, precisely as if the loan had been made and the knowledge had by the board ˙ of directors. We think it very clear, therefore, in whatever aspect the case may be viewed, that the note in question is not a valid note against the town in the hands of the plaintiff, and judgment must be advised for the defendants." The law as to the knowledge of the cashier being the knowledge of the bank is also clearly stated by the supreme court of Massachusetts in Loring v. Brodie, 134 Mass. 453. In that case one Brodie had been accustomed to obtain loans from the bank for his own individual use, through its then cashier, upon trust stocks and bonds as collateral security. The then cashier had full knowledge that the stocks and bonds were held by Brodie in trust, as he had acted as the attorney of Brodie in the management of the trust property. In an action to recover these trust documents from the bank and the proceeds of those disposed of by the bank, the only notice reiled on to hold the bank was the knowledge of its former cashier, while he was acting as such cashier, that the stocks and bonds were trust funds,· and therefore were illegally used by Brodie as collateral for his individual loan. Mr. Justice DEVENS, in delivering the opinion of the court, says: ''The cashier of a bank is its executive officer. It is under his directions that its moneys are received and paid out; that its debts are collected and paid; that its securities are kept and transferred. Such powers as are habitually exercised by cashiers must be held, so far as the public are concerned, to have been conferred on Fuller (the former cashier of the bank) by his election to the office. Merchants Bank v. State Bank, 10 Wall. 604. Whether he was or was not entitled, by author-

ity of the bank, to make loans or discounts, or whether these were actually made by him, is not expressly shown; but in any event, he was the officer to receive information, and conduct the negotiation in regard to them with the bank, to pay out its moneys, and receive the securities therefor. If he received the securities with a knowledge that they were wrongfully transferred, and were the property of others, his knowledge must affect the bank. His attitude and relation were such that it was his duty to communicate this information to the bank, and it cannot be deemed that he was a mere channel of transmission, and that his knowledge is to be treated as affecting only himself. Although he was the attorney of Brodie in taking care of and managing the trust property, he was the cashier also, and there was a confidence reposed in him as such which makes his knowledge the knowledge of the bank." Again, the relation of a cashier to his bank is such as to make him so far an agent of the bank as to bring him and the bank of which he is cashier within the provisions of Section 3991, Comp. Laws, which reads as follows: "As against a principal both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith, and the exercise of ordinary care and diligence, to communicate to the other."

In the case at bar all the facts pertaining to the contract with respondent, being known to the cashier, were in law known to the bank, and hence the question before us must be considered precisely as it would be if the renewal note had been made to Hall, instead of to the bank. The bank is not an innocent payee of the renewal note without notice, and stands in no better position than Hall himself would have stood if the renewal note had been made to him. If, as claimed by counsel for respondent, Hall did not have the title to one-half of the tract described in the contract to convey, we are of the opinion that he could not have recovered upon the renewal note had it been made to him as payee, and, for the reasons stated, the

plaintiff occupies no better position than Hall, and consequently it cannot recover. If, as claimed, Hall could not give a title to the whole tract, or substantially the whole tract, free from reasonable doubt, the respondent could not be required to accept it. Section 4635, Comp. Laws, provides that "an agreement for the sale of property cannot be specifically enforced in favor of a seller who cannot give to the buyer a title free from reasonable doubt." Sections 4628 and 4629 are as follows: "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance. "It is presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation, and that the breach of an agreement to transfer personal property can be thus relieved." It will be seen by these sections of the code a party is not required to accept a title defective as to one-half of the property agreed to be conveyed. He must be able to perform "completely, or nearly so."

2. It is contended by counsel for the respondent that the plaintiff and appellant, occupying the same position as Hall, cannot recover upon the note unless Hall has performed his contract, or has "a title reasonably free from doubt" to convey and in fact had offered to so convey; in other words, that the action upon the note cannot be maintained unless an action to compel specific performance by Hall could be enforced. We think the counsel are right in their contention. It cannot consistently be claimed that Hall, without conveying or having the title to convey, could recover the consideration for the land agreed to be conveyed. On the contrary, he agreed, if he could not make good the title, to return the note to the respondent, and refund the money paid. Time is not made the essence of the contract, and the renewal of the note had the effect, un-

doubtedly, to extend the time in which Hall should procure the title, and Hall was entitled to a reasonable time in which to perfect it. He had, however, nearly two years in which to do this before the respondent formally demanded a return of his note. This, we think, was all the time Hall could reasonably insist upon, and that when respondent demaded his note, he was entitled to its return.

3. But the appellant contends that Hall did have a good title to the whole tract, and that under the contract and the law the respondent was bound to accept a deed from Hall for the interest contracted to be conveyed. Hall's title to the 80 acres in controversy was, however, fully considered by this court in the case of Washabaugh v. Hall, 56 N. W. Rep. 82, and was held to be invalid. A further discussion of the question is therefore unnecessary at this time.

4. The action in this case, as we have seen, was commenced against the respondent and one Helmont S. Kellogg, but Kellogg did not appear in the action or serve an answer. The respondent, as we have seen, answered, and a trial was had, and a verdict and judgment rendered in his favor, without any reference to Kellogg, his codefendant. Counsel for appellant now insist that this was an irregularity that entitles him to a reversal of this judgment. But, under the reform system of practice in force in this state, we think the judgment was regular and proper. The note sued on was a joint and several note, and, as the respondent was the only one who appeared in the action and answered, he was the only defendant as to whom there were any issues to try. As Kellogg had not appeared, plaintiff could have taken judgment against him before the trial of the issues raised by the respondent by his answer, or subsequently, as the respondent answered separately, and it was immaterial to him what proceedings were taken as to his codefendant, Kellogg. The theory of the code seems to be that, in actions upon joint and several obligations, the court is authorized to proceed in entering judgment in such manner as the nature of

the issues may require, and to enter judgment "against any or either of them severally when the plaintiff would be entitled to judgment against such defendant or defendants if the action had been against them or any one of them alone." Subdivision 3; § 4901, Comp. Laws,  See, also, subdivision 1, § 5025. Subdivision 3, § 5096, provides that "in an action against several defendants, the court may in its discretion render judgment against one or more, leaving the action to proceed against the others whenever a several judgment may be proper." It is clear, therefore, under the code, the defendant answering in an action on a joint and several contract may proceed without regard to the proceedings against a codefendant who has failed to appear or answer in the action. We have examined the cases cited by the counsel for the appellant, but, in our opinion, they do not sustain the position contended for by counsel. We are of the opinion, therefore, that, as the only issues in the case were raised by the answer of the respondent, these were all the jury were called upon to try, and that the verdict and judgment could not have properly included any issues not submitted by the respondent's answer, and that the verdict and judgment are regular and proper.

5.   It is also contended by counsel for appellant that the learned court below erred in not admitting evidence to show that Hall was acting as the agent of the respondent and Kellogg in the purchase of the real estate and disbursement of the $500 cash paid, mentioned in the contract with the respondent. Such evidence would have tended to change and vary the terms of the written contract. While an independant contract, made upon an entirely new consideration, may, under certain circumstances, be admissible. the rule that parol evidence to change or vary the terms of a written contract itself is inadmissible is well settled. The general rule requires the rejection of parol evidence to vary or take away obligations entered into by the parties, and by them reduced to writing. Chapin v. Dobson, 78

N. Y. 74. This does not prevent proof of a collateral agreement made prior to or contemporaneous with a written agreement, but not inconsistent with or affecting its terms, to be given in evidence. The case of VanBrunt v. Day, 81 N. Y. 251, as clearly illustrates the distinction made in the cases as any called to our attention. In that case the defendant had assigned a mortgage, and guaranteed the payment of the same. On the trial of an action to foreclose the mortgage, and against him on his guaranty, to recover any deficiency, he sought to show by an oral contemporaneous agreement that he was only to be bound on condition that the premises should be kept insured by the plaintiff. This the court said could not be done, as the agreement to guarantee the payment was absolute upon its face, and could not be varied by proof of an oral contemporaneous agreement that the guarantor was only to be bound on condition that the plaintiff should keep the premises insured for his protection. The rule, said the court, is elementary, that such proof, in the absence of fraud or mistake, is inadmissible to change or qualify a written instrument. But the answer also alleged that, in consideration of $300 retained out of the purchase money of the mortgage, the plaintiff agreed to keep the premises insured; that he did not do so; that the premises were destroyed by fire, and the security of the defendant was thereby lost; and pleaded these facts as a counterclaim. The court said that this agreement was a collateral agreement, made upon an independent consideration, and could therefore be proved, and the damages sustained recovered under his counterclaim. The evidence sought to be introduced in the case at bar went directly to change and vary the written contract. It did not tend to prove any collateral agreement by reason of which the plaintiff or Hall had sustained damages, but its tendency was to show that an absolute contract on the part of Hall, and made by him as a principal with the respondent, was only made by him as a trustee of the respondent himself. This certainly was inadmissible. Washabaugh v. Hall, *supra.*

6.   It is further contended by the appellant that, upon a note given for lands, only a complete failure of title is a defense; a partial failure constiutes no defense.   This may be a correct statement of the old common law doctrine, applicable to pleadings in courts of law, but is not applicable to the facts in this case.   Here the respondent has accepted no deed, but paid money, and executed a note, upon an agreement that the title should be perfected and land conveyed within a specified time, or the note returned and the money refunded.   The respondent does not plead partial failure of consideration, but that, under the contract, he cannot be legally called upon to pay the note, as Hall has not perfected the title and conveyed to him the land.   Washabaugh v. Hall, *supra.*

Our conclusions are that the judgment of the circuit court must be affirmed, and it is so ordered, all the judges concurring.