INDIAN HEAD NATIONAL BANK *vs.* CHARLES F. CLARK.
SAME *vs.* CHARLES F. CLARK & another.
SAME *vs.* SAME.

Suffolk.    March 4, 1896. — April 25, 1896.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Promissory Note — Action — Defence — Fraud — Principal and Agent.*

Where a promissory note is held for value and before maturity, neither the fact that the maker was an accommodation party receiving no consideration for his signature, nor the fact that the person for whose accommodation he signed had no property, is a defence to an action on the note, if the holder took it in good faith.

Knowledge cannot be imputed to a bank of its cashier's intention to embezzle the proceeds of a promissory note when it should be discounted by him at the bank; and the fact that he did embezzle such proceeds is not a defence to an action on the note by the bank against the maker, who is an accommodation party.

If an agent, while acting for his principal, is at the same time committing an independent fraudulent act upon his own account, neither his fraud nor knowledge of it is to be imputed to the principal.

THREE ACTIONS OF CONTRACT, upon five promissory notes and a bank check. The cases were tried together in the Superior Court, without a jury, before *Richardson,* J., who found for the plaintiff in each case; and the defendants alleged exceptions. The facts appear in the opinion.

*P. J. Casey,* for the defendants.

*A. S. Hall,* for the plaintiff.

BARKER, J.   The first suit is against Charles F. Clark.   The others are against him and Fred C. Clark, as copartners.   The first suit is upon a note made by one Sampson to the order of C. F. Clark, and the declaration is against Charles F. Clark as indorser.   The second suit is upon a note made by one Graham to the order of one Hines and indorsed by C. F. Clark and Son, and a note made by C. F. Clark and Son to the order of Hines. The third suit is upon two notes made by C. F. Clark and Son to the order of Hines, and upon a bank check drawn by C. F. Clark and Son to the order of F. A. McKean, the plaintiff's cashier.

The notes were discounted by the plaintiff before maturity. The bank check was dated December 17, 1894, and was discounted by the plaintiff on December 6, 1894.   In taking and discounting the paper the plaintiff acted wholly through its cashier, who, without its knowledge or the knowledge of any of its officers, had for two years been embezzling from the plaintiff, and whose frauds were first discovered on December 6, 1894.   Hines was a friend of the cashier, and knew or had reason to know of the frauds which he was perpetrating upon the bank, and the four notes which were payable to the order of Hines were signed or indorsed by the defendants at his request.   The evidence tended to show that the defendants received no consideration for signing or for indorsing any of the notes or for the check.   It also appeared that at the time when the cashier, acting for the plaintiff, discounted the notes and the check, he knew or had reason to know that the defendants received no consideration for signing or indorsing the paper, and that he also knew that neither Hines nor Graham had property; and the evidence was that all these transactions were parts of a scheme of the cashier to defraud the bank.   The actions were heard together by a justice of the Superior Court, without a jury.

The note sued on in the first action was dated April 10, 1894, was written " three          after date," and contained no other statement of the time when it was payable.   It was treated by the plaintiff, in discounting it and in demanding payment, as payable with grace three months after date.   As the exceptions do not show that any ruling was asked in the Superior Court upon the question whether the demand was sufficient, and as

the question has not been argued by the defendant in this court, we express no opinion upon it.

The questions argued are as to what knowledge of the acts and intentions of the cashier shall be imputed to the bank, and whether his frauds are a defence to the suits.   The defendants contend that the bank should be charged with knowledge that they were accommodation parties to the paper, making or indorsing it without consideration, and that the persons for whom they signed or indorsed had no property ; and also with knowledge that the cashier obtained or procured the making or indorsing of the paper by the defendants, they supposing that it was honestly designed to be used for the accommodation of the persons for whom they lent their names, while the real purpose of the notes and check was to enable the cashier to defraud the bank, and also with knowledge that the cashier intended to embezzle from the bank the proceeds of the paper when it should be discounted ; and the defendants also contend that the frauds of the cashier are to be imputed to the bank, and that the plaintiff cannot recover in the actions.

It is conceded that the bank actually acquired title to the paper by way of discounting it, and that it paid for the paper before maturity.   Being a holder for value and before maturity, neither the fact that the defendants were accommodation parties, receiving no consideration for their signatures, nor the fact that the persons for whose accommodation they signed had no property, is a defence to the actions if the bank took the paper in good faith.   It is therefore immaterial whether knowledge of those facts is to be imputed to the bank, unless there is something which prevents the bank from contending that it is a *bona fide* holder.

As to the embezzlement of the bank's funds, it is plain that in feloniously converting to his own use the proceeds of the discounted paper the cashier was not acting for the bank. *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268, 279.   Knowledge of its cashier's intention to embezzle cannot be imputed to the bank, and the fact that he did embezzle the proceeds of the discounted paper is not a defence to the actions.   In all the transactions of the bank with the paper in suit, the cashier was the only person who acted for the bank.   It was his hand which

received the paper for the bank, placed it among the assets of the bank, paid the bank's money for the paper, and entered the transactions upon its books. No other officer or agent had any knowledge of or any share in the transactions. It is not a case in which the doings of the bank were participated in by some officer or agent other than the one who was committing and who had knowledge of the fraud, as in *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332, *Corcoran* v. *Snow Cattle Co.* 151 Mass. 74, and *First National Bank of Grafton* v. *Babbidge*, 160 Mass. 563. We cannot, therefore, apply the doctrine on which those cases went, that when an officer of a bank, representing for the moment an adverse party, procures from the bank acting through other officers a loan or discount, his knowledge is not the knowledge of the bank, because under such circumstances the guilty officer, being in a position adverse to his principal, and the principal being in fact represented by other agents, the guilty officer is not to be deemed, *pro hac vice*, an agent; and not being an agent there can be no imputation of his fraud or his knowledge to the principal.

When, as here, the whole transaction is the work of the guilty agent alone, we must look to general principles for the rule of decision. When the principal is a corporation, the knowledge or the fraud of its agent is no more to be imputed to the principal than if it were a natural person. A corporation cannot have actual knowledge; and when it is a question whether a corporation is to be charged with knowledge or intent, it is of necessity a question whether the knowledge or the intention of some natural person is to be imputed to it. A general rule of agency, applicable both to corporations and to natural persons, is that "notice to an agent, while acting for his principal, of facts affecting the character of the transaction, is constructive notice to the principal." *Allen* v. *South Boston Railroad*, 150 Mass. 200, 206. But, as there stated, "There is an exception to this rule when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act." And in *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332, 333, it is said, "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that

there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy."

It is the circumstance that the agent, while acting for his principal, is at the same time committing an independent fraudulent act upon his own account, that makes the case an exception to the general rule. This class of cases is recognized in *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268, 278, which is distinguished from them in the opinion, and the decision of which is put upon the ground that the title of the money which in that instance was feloniously drawn from one corporation and placed with the funds of another by a person who was the treasurer of each, did not pass to the corporation with whose funds it was so placed. Where the agent has knowledge of the fraud, but is acting merely for his principal, and is not committing an independent fraud on his own account, the general rule applies. Instances of the kind just mentioned are found in *National Security Bank* v. *Cushman*, 121 Mass. 490, and in *Loring* v. *Brodie*, 134 Mass. 453.

In our opinion, if the obtaining of the signatures of the defendants for the supposed accommodation of the persons for whom they signed, and to whom they looked for indemnity, was a fraud upon the defendants by reason of the cashier's intention to use the paper for the purpose of defrauding his bank, the case is within the exception stated, for the reason that the fraud upon the defendants was an independent fraudulent act committed by the cashier on his own account. Therefore neither the fraud nor knowledge of it is to be imputed to the bank, and it is to be deemed an owner in good faith of the paper which it took for value and before its maturity. Such a holder could recover of the defendants, even if the paper had been stolen from them.

We find in the ruling given, and in the refusals to rule, no error prejudicial to the defendants.*

*Exceptions overruled.*

---

* The defendant requested the judge to rule as follows: " 1. Upon all the evidence the plaintiff cannot recover. 2. The knowledge of the cashier, McKean, that these notes were without consideration, was knowledge to the bank, and they were bound by all the equities existing between the original

---

parties to the note in suit, and therefore the plaintiff cannot recover.    3. It must be assumed in the matter of a promissory note that the agent of a bank is acting within the scope of his authority, and that his knowledge is the knowledge of the bank.    And if McKean took the notes and made the bank indorsement on them, the bank is bound by his act."

The judge refused to rule as requested; and ruled that, even if the defendants received no consideration for signing or indorsing the notes and check, and if McKean, the cashier, had notice of that fact but concealed it from the directors and officers of the bank in carrying out his purpose and scheme of cheating the bank in and by means of these notes and check, such notice of want of consideration to the cashier was not such notice to the plaintiff as to prevent it from recovering, if it was in other respects entitled to recover.