DITTY v. DOMINION NAT. BANK OF BRISTOL, VA.

(Circuit Court of Appeals, Sixth Circuit. June 26, 1896.)

No. 417.

BANK—NOTICE TO OFFICER.

The president of a bank, having embezzled funds of the bank on deposit with its reserve agent, replaced such funds with money borrowed by him on the bank's note, without the directors' knowledge, and such borrowed money was thereafter drawn out to pay the bank's lawful debts. *Held* that, the bank having received the benefit of the loan through its president, it was affected with his knowledge of the loan, and hence was liable to the lender as for money had and received to its use.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

Harlan Cleveland, U. S. Atty., for appellant.

Herbert Jenney, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge.    This was a suit of the Dominion National Bank of Bristol, Va., to require the appellant, Robert M. Ditty, the receiver of the Citizens' National Bank, an insolvent banking association of the United States, to allow as valid a claim for $5,000 on a promissory note executed by C. M. Overman, president of the Citizens' National Bank, in favor of the president of the Dominion National Bank of Bristol, Va.    The receiver of the bank denied that the note was made and delivered by the Citizens' Bank, or any one authorized to act in that behalf; averred that it was made without the knowledge of the directors, that it had never been ratified by them, and that the money borrowed on it did not go to the use or benefit of that bank, but was obtained by Overman for his individual use and benefit.    The facts were agreed on.    It appears that Overman, as president of the Citizens' Bank, before the loan in question, had drawn out from the United States National Bank of New York (the reserve agent of the Citizens' Bank) a large part of its reserve fund there deposited, and that some time thereafter, in order to replace the funds which he had embezzled, he did, as president of the Citizens' Bank, procure the loan in question from the Dominion Bank, and gave the note for $5,000 above described.    It further appeared that this $5,000 was deposited to the credit of the Citizens' Bank in the United States National Bank of New York, and that that particular $5,000 was drawn out upon drafts of the Citizens' Bank, and applied to pay its lawful debts.    It appeared that the directors of the Citizens' Bank had no knowledge or notice of the loan from the Dominion National Bank, or Overman's previous embezzlement of the funds of the Citizens' National Bank on deposit with the United States National Bank, until after the failure of the bank and the appointment of the receiver.

The chief reliance of the appellant is upon the case of Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572.    In that case the Western National Bank sought to compel the allowance of a claim against Armstrong, as receiver of the Fidelity National Bank, for a loan of $200,-000 which it had made on a note executed by E. L. Harper, the proceeds of which were deposited by it to the credit of the account of the Fidelity National Bank, of which Harper was president.    It appeared that Harper had drawn out the amount thus deposited on drafts fraudulently issued by him or his confederates for his own use and benefit. It therefore appeared that the money which was loaned did not inure in any way to the benefit of the bank.    It was held that the president of the bank had no authority to borrow money in such an amount for the benefit of his bank, and that the bank should not be charged with the indebtedness unless its directors had ratified the loan, and that no such ratification was shown in the record before the court.    It is true that the language of Mr. Justice Shiras in delivering the opinion of the court does go to the extent of intimating that, even if the benefit of the loan had been received by the bank in the payment of its debts, this

was not a sufficient ratification, unless the directors had knowledge of the receipt of the money and the benefits arising therefrom. This remark, however, was extrajudicial, and not required by the facts of the case; and, until the supreme court shall adjudicate the point, we think we are at liberty to disregard the obiter dictum, and reach the conclusion we think warranted by the authorities.

In our opinion, even if the president may not have had authority to effect the loan, yet when he, in order to conceal his previous embezzlement, deposited the sum to the credit of the bank with its reserve agent in New York, and it was checked out for the benefit of the bank, the bank and its board of directors were affected with the knowledge which Overman, as its president, had of the receipt of the moneys. Having received the benefit through an agent, it is affected with the burden of the notice which that agent had of its reception, and therefore it became liable for money had and received to its use from the Dominion National Bank. We think the same principle applicable in this case which was applied in the case of Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496. In that case the treasurer of two corporations was a defaulter in both positions. The defalcations were of long standing, and, to avoid discovery at the annual settlement of the company, he drew checks of the other, and deposited them to the credit of one company in bank. On subsequent investigation, the question was whether the company whose bank account had been swelled by the checks of the other was a debtor to the other for the deposits thus made by the common treasurer. It was held that the company receiving the money, having received it through the sole agency of the man who knew it to be stolen, could only take it with the burden of his knowledge. So, in this case the bank, having received the money through the agency of its president, could not retain it without assuming the burden of the president's knowledge as to how it came to be obtained. We do not see that the circumstance, in that case, that the treasurer stole the money, and, in this, that the president obtained it on the false representation that he was authorized to borrow it for his bank, makes any reasonable distinction between the two cases. The judgment of the court below is affirmed.