BENNER v. BLUMAUER–FRANK DRUG CO.

(District Court, W. D. Washington, S. D.  August 1, 1912.)

No. 841.

BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCE—REASONABLE CAUSE TO BELIEVE INTENT—KNOWLEDGE OF OFFICER OF CORPORATION.

The president of defendant, a wholesale drug company, purchased the capital stock of the bankrupt company, which was a customer and debtor of defendant. After about a year, during which time the indebtedness had increased, he resigned as president of defendant, and shortly afterward, on defendant's demand, the bankrupt paid the indebtedness; some

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the payments having been made within four months of the bankruptcy. *Held*, that defendant was not chargeable with knowledge of the facts learned by its president as a stockholder of bankrupt with respect to the latter's solvency or insolvency, and that, in the absence of other evidence to charge it with knowledge of insolvency at the time the payments were made, it could not be held to have had reasonable cause to believe that a preference was intended to render them voidable as such.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*]

In Equity. Suit by J. D. Benner as trustee of the Wynkoop-Vaughan Company, bankrupt, against the Blumauer-Frank Drug Company. On exceptions by defendant to report of special master. Exceptions sustained, and decree for defendant.

This is a suit brought by the trustee in bankruptcy to set aside an alleged preference, within the four-months period, consisting of the payment of $900 to the defendant, Blumauer-Frank Drug Company. It is now before the court upon the defendant's exceptions to the report of the special master, finding such payments to be voidable preferences. The controlling facts are as follows:

W. F. Fleidner was president of the defendant company from 1907 to January 15, 1910. On February 13, 1909, Fleidner bought all of the stock of the Wynkoop-Vaughan Drug Company. Upon this purchase it was estimated by the parties to the sale that the assets amounted to $30,000 and the debts to $20,000. At that time the defendant was a creditor of the bankrupt to the amount of $10,280.89. In November, 1909, Fleidner installed as manager of the Wynkoop-Vaughan Company Isaac Kern, formerly a salesman of the defendant company. He also installed his (Fleidner's) sister as treasurer and cashier of that company.

On January 15, 1910, Fleidner resigned as president of the defendant company. Upon his resignation, the defendant company virtually ceased its sales to the Wynkoop-Vaughan Company, demanded payment of its account, and informed Fleidner that they would look to him for payment, in case the Wynkoop-Vaughan Company did not pay. On January 19, 1910, the Wynkoop-Vaughan Company borrowed $10,000 from Fleidner and paid that amount to the defendant on account. There is no evidence that the defendant knew that it was so borrowed. On March 8, 1910, a further payment was made to the defendant of $700, and on May 10, 1910, another payment of $200.32 was made, entirely paying defendant's account. It is to set aside, as voidable preferences, the last two payments that this suit is brought, under section 60 (a) and (b) of the Bankruptcy Act of 1898.

Prior to July 5, 1910, a receiver was appointed for the Wynkoop-Vaughan Company in the state court and its retail drug business conducted for a time by such receiver. On July 5, 1910, a petition was filed in this court, praying that the company be declared an involuntary bankrupt. On July 26, 1910, such company was declared an involuntary bankrupt, and on August 3, 1910, the plaintiff in this suit was appointed trustee. Proofs of claims were filed, amounting to $38,925.34. The trustee conducted the retail drug business of the bankrupt for a considerable time, and at length, at judicial sale, disposed of its stock and assets for $4,516.06.

G. P. Fishburne and Raymond J. McMillan, for complainant.
William H. Pratt, for defendant.

CUSHMAN, District Judge (after stating the facts as above). By section 60 (a) and (b) of the Bankrupt Act (Act July 1, 1898, c. 541, 30

Stat. 562, U. S. Comp. St. 1901, p. 3445, 1 Fed. Stat. Ann. 672, 674), it is provided:

(a) "A person shall be deemed to have given a preference, if, being insolvent, he has * * * made a transfer of any of his property and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other such creditors of the same class."

(b) "If a bankrupt shall have given a preference within four months before the filing of a petition * * * and the person receiving it, or to be benefited thereby, or his agent acting therein shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

The special master's findings are excepted to by the defendant, upon the ground that the evidence does not show the bankrupt to have been insolvent at the time of the payments to the defendant, and that it does not show that the defendant, at the time of these payments, had "reasonable cause to believe that it was intended thereby to give a preference."

In the sale by the Wynkoop-Vaughan Company to Fleidner it was provided that payment of the purchase price, $10,000, that being the amount its estimated assets exceeded its liabilities, should be made at the rate of $250 a month. It was further provided that the stock should remain with the seller as security, but that no personal liability should accrue from Fleidner to the seller, but that the seller should, at all times, be relegated to the said security for the payment of the amount due.

It is contended that the terms of this sale and the facts above recited show insolvency at the date of the payments to the defendant, and, further, that the defendant then had "reasonable cause to believe that a preference was intended." Assuming, but not deciding, that the bankrupt was insolvent in March and May, 1910, the latter question remains for determination.

Both the master, in his report, and plaintiff's counsel, in their brief, rely, to establish that the defendant had reasonable cause to believe the bankrupt then insolvent, upon the fact that Fleidner, the president of the defendant company to within two months of the time of the first of these alleged preferential payments, was the sole stockholder of the bankrupt for more than a year prior thereto; that, therefore, the defendant must have known of the bankrupt's insolvency; that Fleidner is shown to have consulted with other officers of the defendant company, which, together with the steps taken by the defendant to secure payment of its account, upon Fleidner's resigning as its president, show the same thing. In the brief of plaintiff's counsel it is said:

"The sole question, therefore, under this element of preference is this: Should Fleidner, as president of the Blumauer-Frank Drug Company, acting as a reasonably prudent man, be charged with the facts and circumstances with respect to the financial condition of the Wynkoop-Vaughan Company that Fleidner, as the sole stockholder of that company, is conclusively chargeable with? It may be claimed that the situation is changed by reason of the fact that Fleidner severed his connection with the defendant a few months prior to the payments in question. However, the evidence clearly shows that, long prior to January 15, 1910, the bankrupt was hopelessly insolvent,

a fact which Fleidner is certainly chargeable with knowing, and there is nothing in the record to indicate any change in that condition between the 15th of January, 1910, and the 10th of May, 1910."

It is not pretended that Fleidner in any way took over the stock in trust for, or to protect, the defendant. The fact that he loaned the bankrupt $10,000, to pay the greater part of defendant's claim. six months before the petition praying that the Wynkoop-Vaughan Company be adjudged a bankrupt was filed, and at a time it is now claimed it was insolvent, establishes that he was not. The peculiar terms of the sale, and what Fleidner then or thereafter learned, is not the knowledge of the defendant, nor to be presumed to be communicated to it, for Fleidner was then acting for himself, and not the defendant. Under such circumstances, the law does not presume knowledge upon the part of the principal. This has been often decided. It will suffice to refer to the one case of American Surety Company v. Pauly, 170 U. S. 133, at page 156, 18 Sup. Ct. 552, at page 561 (42 L. Ed. 977):

"The presumption that the agent informed his principal of that which his duty and the interests of his principal required him to communicate does not arise where the agent acts or makes declarations, not in the execution of any duty that he owes to the principal, nor within any authority possessed by him, but to subserve simply his own personal ends, or to commit some fraud against the principal. In such cases, the principal is not bound by the acts or declarations of the agent. unless it be proved that he had at the time actual notice of them. * * * "

The fact that, during the time Fleidner was connected with both companies—11 months, during all of which time plaintiff contends the Wynkoop-Vaughan Company was insolvent—the debt of that company to the defendant was not reduced, or any effort made to reduce it, but was increased from $10,280.89 to $10,900, warrants the presumption that the defendant was not apprised of the insolvency of the Wynkoop-Vaughan Company, if it was in fact insolvent. The mere fact that the defendant sought payment of its account upon the resignation of Mr. Fleidner, its president, is not enough to charge it with a "reasonable cause to believe a preference was intended."

The court finds that the complainant has not, by a preponderance of the evidence, established this necessary element of his case. The exceptions are sustained, and the defendant prevails.

Findings and decree will be prepared in accordance with this opinion.