20 F.(2d)—61

## HOLBROOK v. UNITED STATES NAT. BANK et al.

District Court, S. D. Texas, at Galveston.
July 25, 1927.

No. 922.

**1. Principal and agent ⬅175(1)—Acceptance of benefit of act of volunteer agent is ratification within limits.**

One who accepts the benefit of an act of a volunteer must also accept the burden naturally and necessarily imposed by the act, but is not bound by collateral and incidental acts, of which he had no knowledge, as by the fraud or promises made by the volunteer.

**2. Bankruptcy ⬅166(1)—Not fact of preference, but creditor's participation therein, makes preference illegal.**

It is not the fact of preference which makes it illegal, but the participation of the creditors in the preference.

**3. Bankruptcy ⬅166(5)—Transfer of city deposit from an insolvent to a solvent bank held to effect voidable preference.**

By an arrangement between the brother of a city treasurer, who by custom was acting for his brother during the latter's absence, both being officers of the same bank, and the commissioner of finance of the city, who was the brother of another banker, whose bank held city deposits and was in failing circumstances, a part of the deposit in the insolvent bank was transferred to the credit of the city in the other bank, which was solvent, by check of the commissioner, to which he signed his brother's name, which he was authorized to do. *Held* that, in making the arrangement, both parties acted officially as agents of the city, which was charged with their knowledge of the insolvency, that this was not changed by the fact that the check making the actual transfer was signed by the commissioner as agent for the insolvent, and the transaction effected a voidable preference in favor of the city on subsequent bankruptcy.

At Law. Action by T. J. Holbrook, trustee in bankruptcy of Ed McCarthy, doing business as Ed McCarthy & Co., against the United States National Bank and the City of Galveston. Judgment for plaintiff against the City.

Armstrong & Cranford, of Galveston, Tex., for trustee.

Bryan F. Williams, of Galveston, Tex., for defendant city of Galveston.

HUTCHESON, Judge. This is a suit brought by the trustee in bankruptcy to recover from the United States National Bank and the city of Galveston the sum of $90,000, which on October 7, 1926, had been transferred on the books of the United States National Bank on the order of Ed McCarthy acting by S. L. McCarthy, his agent, from the

credit of Ed McCarthy & Company to the credit of the city of Galveston.

The city is sued under sections 60a, 60b, of the Bankruptcy Act (Comp. St. § 9644), the plaintiff charging that the bankrupt, being indebted to the city of Galveston in more than that sum, did on the 7th of October, 1926, at a time when he was insolvent, cause a transfer of the amount claimed to be made on the books of the United States National Bank, where it stood to the credit of Ed McCarthy, from his credit to the credit of the city of Galveston; that such transfer therefore acted as a preference, and that the city of Galveston, "the person receiving it or to be benefited thereby, or its agent acting therein," had reasonable cause to believe that such transfer would effect a preference.

The United States National Bank is made a party upon some theory of liability which is not clearly disclosed in the pleadings or the argument and which I reject, that it made itself liable by participating in and permitting the transfer to be made. The evidence establishes without contradiction the following facts:

That S. L. McCarthy was, and for some time prior to October had been, commissioner of finance and revenue, as to whom the city charter provided: "He shall have under his special charge the enforcement of all laws for the assessment and collection of taxes of every kind, and the collection of all revenues belonging to the city from whatever source the same may be derived, and who shall also examine into and keep informed as to the finances of the city."

Lee Kempner is, and for some time prior to the matters in controversy had been, treasurer of the city of Galveston, whose duty as determined by the charter, is to receive and keep all moneys belonging to the city; the charter providing: "All moneys belonging to the city and received by any officer or agent thereof, either from collections, fines or any source whatever, shall be by him deposited with the said treasurer daily." Lee Kempner was an officer of the United States National Bank, as was also his brother, I. H. Kempner, and A. J. Peterson, the cashier of the bank.

The evidence further shows that the treasurer kept deposits of the city of Galveston in various sums in various banks, among them the individual bank of Ed McCarthy, doing business under the name of Ed McCarthy & Co.; that S. L. McCarthy was an agent of his brother, and authorized to sign Ed McCarthy's name to checks. It also shows that the city's bills were paid by voucher checks drawn on Ed McCarthy & Co., and before being presented for payment these were countersigned by S. L. McCarthy.

It also shows that it had been the habit and custom of I. H. Kempner, in the absence of his brother, Lee Kempner, to act as treasurer, sign checks for him, and generally look after the financial affairs in his care as treasurer during his absence. That at the time of the transaction out of which this suit grows Lee Kempner was absent from the city of Galveston; that for a short time before the transactions complained of there had been threats of a run on the McCarthy bank, and a tense condition of affairs existed there.

As early as October 4 a conversation was had between Sam McCarthy, representing his brother Ed, and I. H. Kempner and Peterson, in which there were statements by McCarthy that he was solvent, but that he was in great need for funds, and that there was in progress a run of greater or less proportion upon the McCarthy bank. At that time, at the close of business on October 4, Ed McCarthy had to his credit in the United States National Bank $148,934.29. The run upon the McCarthy bank continued and progressively increased, and the record shows that between September 30 and October 7, upon which latter date the bank closed its doors, the withdrawals exceeded the deposits in the sum of $300,000.

On that date S. L. McCarthy, having in his possession ready for his countersignature warrants on account of city bills of more than $150,000, knowing or fearing that, if these warrants were delivered, it would bring the affairs of Ed McCarthy to a collapse, had a conference with I. H. Kempner and Peterson, seeking advice. I. H. Kempner, acting on behalf of the treasurer, and himself, being interested on account of the fact that one of his brothers was surety on the bond of Ed McCarthy to the city for sums deposited there, advised McCarthy not to withhold his signature from the warrants, but to change by stamp the bank on which they were payable from Ed McCarthy to the United States National Bank, and transfer to the city of Galveston $90,000 of the funds on deposit to Ed McCarthy's credit with the United States National Bank, and clear all the vouchers thus altered through the United States National Bank, which was done.

At that time Ed McCarthy & Co. was hopelessly insolvent, and the effect of transferring the $90,000 which stood to his general credit in the United States National Bank to the credit of the city of Galveston was to prefer the city of Galveston to that

amount. That such would be the effect Mc-Carthy, Peterson, and Kempner knew; Mc-Carthy knowing fully the fact of the insolvent condition of his brother, and Kempner and Peterson knowing so much that no reasonably minded person acquainted with business and banking practices and conditions could fail to know, or at least to believe, that the effect of the transfer would be to prefer the city.

The transfer was effected in the following manner: I. H. Kempner, in the name of the city treasurer, drew a draft on Ed McCarthy & Co. for $90,000. This draft was presented to S. L. McCarthy by Peterson, and S. L. McCarthy gave him a check, signed "Ed McCarthy, by S. L. McCarthy," on the United States National Bank for $90,000 in exchange for the treasurer's draft. The bank made the proper book entries, passing $90,000 out of Ed McCarthy's account and into the account of the city of Galveston.

The evidence of insolvency and of the fact that the persons engaged in effecting the transfer of the $90,000 knew of the insolvency, and of the fact that the city was thereby obtaining a preference, is so overwhelming that no point on these matters is seriously made by the city. The city, however, intrenches itself behind the proposition that, granting insolvency and knowledge of insolvency by those who acted in the matter, plaintiff must fail because, as the city says, those persons so acting were neither the city nor the agents of the city, and that there is no proof whatever bringing home knowledge to the city through any of its accredited and authorized agents.

I agree with the city in its contention on the facts that no other person than the three actually involved in this transaction knew anything about it, and in its contention that in law, unless the knowledge of these persons, or some of them, can be imputed to the city, plaintiff's suit must fail. The plaintiff vigorously asserts that the city is bound by the knowledge of the actors in this affair, because the persons acting in it were the city's agents thereunto duly authorized; that S. L. McCarthy was the commissioner of finance, whose duty it was to look after the financial affairs of the city; that Kempner was the treasurer pro hac vice, whose primary duty it was to act for the city in handling funds; and that, whether so or not, both Kempner and Peterson were acting for the city in obtaining the preference, and the city, having taken the benefits of their act, must be charged with the burden of the conditions known to them all under which they received them.

[1] It was my first impression that the plaintiff's case for recovery was clear, upon the broad principle that, the transaction having been effected as the result of the actions of persons purporting to act for it, these persons would be in law held to be the city's agents, whose knowledge would be imputable to the city, upon the principles of ratification. As a matter of first impression, it would seem that, if one obtained through the services of another a benefit, he must accept that benefit with the burden; but upon closer examination it will be found that this principle, though sound, is limited to the necessary results of the transaction, and cannot be extended to embrace its collateral incidents or consequences; that is, while a person cannot accept the benefits of an act, without also accepting the necessary and inevitable consequences which flow from those acts, he will not be bound any further than those consequences.

For instance, if A. owes B. a debt, and C., a volunteer, collects from A. and pays B., B. is bound to discharge A. from the debt, if he accepts the payment; but he is not bound to carry out any collateral agreement which A. and the volunteer may have made. Again, if A. owes B. a debt, and C. corruptly obtains from A. the money and delivers it to B., B. may retain the money on account of the debt without being responsible for the fraud by which it was obtained. So, if A. owes B. a sum, and A., insolvent, desires to prefer B., A. may do so through the intermediation of an agent of his own, who has full knowledge of the preferential conditions, and B. may receive the money without being affected by the knowledge.

[2] So plaintiff's general proposition, that the city is bound by the knowledge of those by whose services the benefit was obtained, must be qualified to the extent that plaintiff must establish, in order to recover here, that some of the persons acting were acting for and on behalf of the city. That this is so, and should be so, is made plain by the structure of the bankrupt law. It is not the fact of a preference which gives the right to recovery; it is the participation of the creditor in the act of preference which strikes it down. The purpose of the act is to encourage liberal and fair credit and to discourage those preferences induced and arranged by a too diligent creditor, which start the debtor on his way to the bankruptcy court. Now, if a creditor receive a preference under cir-

cumstances which exonerate him from being concerned in bringing it about, no violation of the law or the principles of the law occurs, and no recovery should be had.

[3] Our first inquiry, then, is whether either of the parties was in law the agent of the city in the matter in hand. First, as to Mc-Carthy: The position of the city here is that McCarthy was not "a person receiving the transfer," or the agent of the city in receiving it; that, to the contrary, he was the agent of the debtor, and that in this particular act he was not acting in the course of his employment, or within the scope of his authority.

It is true that he did act as the agent of the debtor in the drawing of the check, but it is also true that he acted as the agent of the city in making the arrangements with Kempner and Peterson for changing the drawee bank and arranging to have the warrants paid. That McCarthy was the agent of the city with reference to the matters intrusted to him under the charter cannot be doubted. That in acting as he did he was acting in the discharge of his duties as such is equally free from doubt. Can it make any difference in law that, in the interest of both of his principals, he was acting in a dual capacity?

The city asserts that it can; that, though McCarthy be held to be the agent of the city, his knowledge cannot be imputed to it, because his interest as agent for his brother was of such a character that the fiction of imputed knowledge is overthrown by the presumption that he would not have disclosed his information, and therefore his knowledge becomes immaterial; that, after all, the knowledge of the agent is imputed to the principal only upon the theory that it was the agent's duty to disclose, and the following presumption of law that he did disclose.

The general rule is thus stated in 2 Corpus Juris, 862: "It is a well-settled general rule that a principal is affected with general knowledge, regardless of his actual knowledge of all material facts of which his agent received notice, or acquires knowledge while acting in the course of his employment, and within the scope of his authority, although the agent does not in fact inform the principal thereof. This rule is generally rested upon the principle that it is the duty of the agent to disclose to his principal all material facts coming to his knowledge, and upon the presumption that he has discharged that duty and also upon the fiction of the legal identity of principal and agent. The principal is not affected with knowledge which the agent acquires while not acting in the course of his employment or which relates to matters not in the scope of his authority."

The exception invoked by the city is stated thus: "Notice to an agent is not notice to his principal, when the circumstances are such as to raise a clear presumption that the agent will not transmit his knowledge to his principal. Accordingly, where the agent is engaged in a transaction in which he is interested adversely to his principal, or where the agent is engaged in a transaction where his interest not to disclose is such that it could be presumed that he did not disclose, no fiction of disclosure can be indulged." Authorities in support of the general exception are: Levy & Cohn Mule Co. v. Kauffman (C. C. A.) 114 F. 170; In re Senoia Duck Mills (D. C.) 193 F. 711; Benner v. Blumauer-Frank Drug Co. (D. C.) 198 F. 362; High v. Opalite Title Co. (C. C. A.) 184 F. 450; Lilly v. Hamilton Bank (C. C. A.) 178 F. 53, 29 L. R. A. (N. S.) 558; and the leading and controlling case of American National Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310.

To this position the plaintiff replies, first, that the principle invoked does not apply to the agent of a municipal corporation, citing Painter v. Napoleon Township (D. C.) 190 F. 637; but since the rule and the exception are evidentiary fictions, I find no warrant for the further exception, in the case of a public officer, which Judge Killits seeks to make, and I cannot agree with the plaintiff upon this contention.

The plaintiff further invokes the language of the statute and the decision in Campbell v. Balcomb, 183 F. 766 (C. C. A. 7th Circuit), to the effect that, whatever may be the effect at common law as to imputed knowledge, the bankruptcy statute is sui generis and its words determine the rights of the parties. Quoting from that case, they say: "The statute purports to give the whole law on the subject. In it we find no exceptions to the effect that a preferred creditor may hold his advantage, provided his agent and the insolvent have confidential relations, or provided his agent has self-interests antagonistic to a disclosure to his principal. To interpolate such exceptions we deem beyond the proper sphere of statutory construction and violative of the spirit of the act."

The city cites, contra, High v. Opalite Tile Co. (C. C. A.) 184 F. 450; Lilly v. Hamilton Bank (C. C. A.) 178 F. 53, 29 L. R. A. (N. S.) 558. These cases have to do with knowledge sought to be imputed under circumstances where the agent has been en-

gaged in the practice of a fraud upon the principal sought to be charged with knowledge, and ought to be differentiated from the Campbell Case. If, however, there is any conflict between them, I think the Campbell Case the better law, and am prepared to follow it. As the result of this, the knowledge of S. L. McCarthy, the agent of the city in the transaction which brought about the payment, must be imputed to the city, so as to avoid and defeat the preference.

If I am wrong in this, however, I think it clear that the city cannot retain the money, because it is charged with knowledge on the part of the other agent, I. H. Kempner. The city admits that, if Lee Kempner, the treasurer, had acted in the premises, it would have been bound by his knowledge; but it denies that I. H. Kempner was its agent, and that it can in any manner be bound by his knowledge. It invokes the principle, set out in Balcomb v. Old National Bank (C. C. A.) 201 F. 680, and Hoover v. Wise, 91 U. S. 308, 23 L. Ed. 392, that a subagent, appointed by an agent without authority to delegate, acts as the agent, not of the principal, but of the agent, and his knowledge cannot therefore be imputed to the principal.

In 2 Corpus Juris, p. 872, § 551, it is said: "Whether the principal is chargeable with notice to or knowledge of a subagent depends upon the authority of the primary agent to appoint the subagent. Where the primary agent has such authority, under contract or by custom, the principal will be charged with the subagent's knowledge; if he has not such authority, the principal will not be charged."

In this case the evidence shows that it was the custom of I. H. Kempner to act as treasurer in Lee Kempner's absence; that he signed checks as such, and distributed and handled the city's funds just as Lee Kempner would do if present; that in the matter in question he was acting for and on behalf of the city and as its agent in pursuance of a custom long established and long carried out. It would be extending a principle, itself of doubtful value, far beyond what equity and common sense require, to hold I. H. Kempner a subagent, so as to relieve the city from the effect of his knowledge. The city in this case has taken the full benefit of Kempner's activities, and has never questioned, and does not now question, his authority to act as its treasurer in this or any other matter, and it would be a strained and unsound construction indeed which declared that I. H. Kempner had the power to sign checks as treasurer, under which hundreds of thousands of dollars were distributed under a custom long established, and yet was not the agent of the city to the extent and with the same result that the treasurer would have been if present and acting.

This is not a case of the appointment of a subagent; but, if it were, the custom would sustain a finding of authority to do so. This is a case where I. H. Kempner acted as treasurer of the city, not as the agent of the treasurer, where the city has gotten the benefit of his actions, and has ratified and confirmed them.

It is therefore clear that the trustee should recover in this case, against the city, because of the knowledge of both McCarthy and Kempner, and a decree should go for the trustee for the amount sued for, against the city, but not against the bank.