## IRVING TRUST CO. v. STATE BANKERS' FINANCIAL CORPORATION et al.

District Court, S. D. New York.
April 5, 1930.

Ernst, Gale & Bernays, of New York City (Murray C. Bernays and Abraham Friedman, both of New York City, of counsel), for plaintiff.

David W. Kahn, of New York City, for defendant State Bankers' Financial Corporation.

Lind, Shlivek, Marks & Brin, of New York City, for defendant Samuel Schuckman.

Dean, King, Smith, & Taylor, of New York City (George M. Welch, of New York City, of counsel), for defendant Lawyers' Trust Co.

Max Jelline, of New York City, for defendants Harris Mindlin, Israel Kopeloff, Louis Goldfarb, and Alexander Goldberg.

Jacob Lippman, of New York City, for defendant Samuel Levine.

Josephine M. Steinbugler, of Brooklyn, N. Y. (Joseph S. Robinson, of New York City, of counsel), for defendants Ernest Rapsch and Karl Burg.

THACHER, District Judge (after stating the facts as above).

State Capital was organized in May, 1928, and from that time until September 17, 1929, when it closed its doors, had its offices at 170 Broadway, New York City, where it was engaged in the business of selling the capital stock of State Bankers and in buying and selling unlisted securities, principally bank and insurance stocks, in so-called "over the counter" transactions. The affairs of this corporation were managed by defendant Schuckman, who was active in its organization and in the organization of State Bankers. Associated with him were Philip Cruso and Baruch Zuckerman, who were influential in procuring the capital with which State Bankers was originally organized, and in selling its stock. State Bankers was organized under the laws of Delaware in order to conduct a purely investment business. It has maintained a statutory office in the state of Delaware, but its business was transacted by Schuckman, Zuckerman, and Philip Cruso at 170 Broadway, in the offices of State Capital. These men were all directors of State Bankers. Solomon Cruso, a brother of Philip, was its president, and a member of its executive committee. [1] Schuckman was its vice president and a member of its executive committee. Harry Cruso, a brother of Philip and Solomon, was its treasurer and a member of its executive committee. Zuckerman was its secretary, and a member of its executive committee. Solomon and Harry Cruso paid very little attention to its affairs, and such business as it had was attended to by Zuckerman, Philip Cruso, and Schuckman, in the office at 170 Broadway, New York City. Philip Cruso and Zuckerman, as customers' men, attended at these offices and were actively engaged during the usual business hours of each day in selling capital stock of State Bankers and in soliciting purchases and sales of unlisted securities in behalf of State Capital. They were interested, as stockholders, in State Capital. They assert ignorance of its affairs and deny knowledge of its financial condition at all times. In view of their intimate association with Schuckman and their concern in the business in which they were personally engaged and directly interested I cannot accept their testimony to this effect, and must conclude that they had a general knowledge of the business in which they were engaged, sufficient for them to know in a general way the financial condition of State Capital. That they must have known during the summer of 1929 that State Capital was going heavily short of the market, and that only a severe depreciation in the value of the stocks in which it was dealing could save it from financial ruin, I have no doubt. Their personal participation in the transactions immediately preceding the failure of State Capital, by which they procured payments to be made to themselves and to others, is entirely persuasive of a deliberate intent to save from the wreckage of State Capital moneys which they were not entitled to receive or expend in the manner disclosed by the proofs. It is not necessary to review this shameful record. The ultimate fact of

their knowledge is disputed only by themselves, and their own acts demonstrate the falsity of their denials. I am therefore constrained to find that Schuckman, Philip Cruso, and Zuckerman, in making payment of $39,050 to State Bankers, had full knowledge that the bankrupt was insolvent, and that the payment would necessarily operate as a preference. These payments were made to, and received by, Philip Cruso and Zuckerman as the representatives of State Baners.

■ This brings one to the main reliance of the defense. The knowledge of Schuckman, Philip Cruso, and Zuckerman, it is said, cannot be imputed to State Bankers, because in making the payments in question they were endeavoring to restore that which they had wrongfully taken from State Bankers. In considering this question it must be emphasized that these three persons were the only persons concerned in the transactions between State Bankers and State Capital. Philip Cruso and Zuckerman acted for State Bankers in receiving the payment, and in so acting they were serving no interest adverse to State Capital. Section 60b of the Bankruptcy Act (11 USCA § 96(b) expressly provides that a preferential payment is voidable, provided the person receiving it or "his agent acting therein" shall have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference. This is plain language, and there is authority for holding that the agents' interest to conceal the preferential character of the transaction is entirely irrelevant. Campbell v. Balcomb (C. C. A.) 183 F. 766; Holbrook v. U. S. Nat. Bank (D. C.) 20 F.(2d) 961; In re Henwood & Nowak & Co. (D. C.) 27 F.(2d) 888. To the contrary effect defendants cite McNaboe v. Columbian Mfg. Co. (C. C. A.) 153 F. 967; High v. Opalite Tile Co. (C. C. A.) 184 F. 450, and Lilly v. Hamilton Bank (C. C. A.) 178 F. 53, 29 L. R. A. (N. S.) 558. If the first two of these cases cited contra are still good law, they must be read as holding merely that a thief, in replacing stolen property without the owner's knowledge, is not, within the meaning of the statute, "his agent acting therein." It is hard to see how one may escape the statute once the person whose knowledge is sought to be imputed is shown to have acted as the agent of the person benefited in receiving the payment. In the Lilly Case suit was brought on a note, and the question was whether the knowledge of two of the plaintiff's officers who had offered the note to the plaintiff's discount committee, but had

not participated in its decision to accept it for discount, was imputable to the plaintiff; and it was held that, since the officers were not in this transaction acting for the plaintiff, their knowledge was not the knowledge of the plaintiff. Section 60b of the Bankruptcy Act (11 USCA § 96(b) was not involved. In Benner v. Blumauer-Frank Drug Co. (D. C.) 198 F. 362, it plainly appeared that the officer whose knowledge was sought to be imputed to the defendant was not acting as its agent at the time the alleged preferential payments were made, he having previously resigned as president.

But even if the defendants could escape the plain language of the statute, this would not strengthen their defense, for I cannot find that in receiving these payments Zuckerman and Philip Cruso had any interest of their own to serve which was adverse to that of State Bankers. It may be that, owing to their neglect in allowing the securities to remain with State Capital, to be used as Schuckman pleased, they were seriously at fault in abusing their authority, and therefore were under strong motives to see that the property which they had thus risked should be restored to its rightful owner. But the original wrong was not unauthorized, and in restoring the value of the securities their interest was not adverse. They were the only persons acting for State Bankers, and there is no reason why their knowledge should not be imputed to their principal. Clarke v. Rogers, 228 U. S. 534, 33 S. Ct. 587, 57 L. Ed. 953; Holden v. N. Y. & Erie Bank, 72 N. Y. 286; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698; First Nat. Bank of New Milford v. Town of New Milford, 36 Conn. 93.

■ There is still another ground for so holding. Where an agent engages in a fraudulent transaction of which his principal receives the fruits, the principal, if he insists upon retaining the benefits of the transaction, is chargeable with the knowledge of his agent. Curtis, Collins & Holbrook Co. v. U. S., 262 U. S. 215, 224, 43 S. Ct. 570, 67 L. Ed. 956; Nat. Bank of Oshkosh v. Munger (C. C. A.) 95 F. 87, 92; Atlantic Cotton Mills v. Indian Orchard Mills, supra; First Nat. Bank of Monmouth v. Dunbar, 118 Ill. 625, 9 N. E. 186; Millward-Cliff Cracker Co.'s Estate, 161 Pa. 157, 28 A. 1072.

Result is that the knowledge of Philip Cruso and Baruch Zuckerman must be imputed to State Bankers, and that the pay-

ment of the obligations owing by State Capital to it were accordingly preferential and recoverable at the suit of the trustee.

It is argued that these payments cannot be regarded as transfers intended to hinder, delay, and defraud creditors because they were made and accepted in satisfaction of an existing obligation. But in view of the other transactions occurring at the same time by which the persons in control of State Bankers divested it of its property, in view of the subsequent action taken through State Bankers to prevent recovery by the trustee of the preferential payments made to it, by hasty distribution of these funds to its stockholders, conclusion that this transfer was intended to hinder, delay, and defraud creditors is unavoidable. Intent to defraud is established by the proofs showing that the moneys used to make the payments were procured by accepting deliveries of stock, without payment or intention to pay, and selling this stock to others for cash. These funds, thus collected, were appropriated to the payment of favored creditors and others not creditors at all—leaving those who had delivered the stock to prove their claims against an empty shell.

All of the funds have been traced by the trustee into one account, against which an attachment has been levied. The transfers were void, and the deposits in the account are the property of the estate in bankruptcy. It follows that the attachment must be vacated, except to the extent of $95.94, which is the only money in the account to which the trustee is not entitled.

A decree following the prayer of the bill may be settled in chambers on April 9, 1930, at 10:00 a. m.