# AMERICAN NATIONAL BANK OF NASHVILLE, TENNESSEE, *v.* MILLER, AGENT OF THE FIRST NATIONAL BANK OF MACON, GEORGIA.

## ERROR TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 325.   Argued May 9, 1913.—Decided June 9, 1913.

When a bank has performed the dual function of collecting and crediting a check the transaction is closed; and, in the absence of fraud or mutual mistake, the transaction is equivalent to payment in usual course as though presented to another bank and paid over the counter. *National Bank* v. *Burkhardt,* 100 U. S. 686.

While knowledge of an officer of a bank of a fact which it is his duty to declare, and not his interest to conceal, is to be treated as that of the bank; where it is his interest to conceal such knowledge the law does not, by a fiction, charge the bank with such knowledge.

There is a presumption that an officer of a bank will disclose his knowledge of matters which affect the bank and which it is not to his personal interest to conceal; and there is also presumption that he will not disclose those matters of which he has knowledge and which it is his interest to conceal, including his own bankruptcy and indebtedness to other banks.

A bank, on which the president of another bank just before his own bankruptcy drew a check in favor of the latter, cannot, after having paid the check by crediting it to the payee bank, cancel the credit and retain the money on the ground that the payee bank is to be imputed with constructive knowledge of its president's bankruptcy.

185 Fed. Rep. 338, affirmed.

THE facts, which involve the right of a bank to cancel payments made on a bankrupt's check on the ground of constructive knowledge of the bankruptcy on the part of the payee, are stated in the opinion.

*Mr. John M. Gaut,* with whom *Mr. J. S. Pilcher* was on the brief, for plaintiff in error:

The Nashville Bank, at the time when it made the book entries and mailed the letter of advice, was in total ignorance of the bankrupt's insolvency, suspension and bankruptcy.

Having acted under mistake of fact, that bank had the right, as between itself and the bankrupt or any one standing in his shoes, to revoke the book entries and make the set-off. *Re Farmers' Bank*, 13 Fed. Rep. 361; *Re Dickinson*, 5 Fed. B. R. 483; *Union Bank* v. *McKay*, 102 Fed. Rep. 662; *Kelley* v. *Solare*, 9 Meeson & Welsby, 54; *Bell* v. *Gardner*, 4 Man. & Gran. 10; *French* v. *DeBow*, 38 Michigan, 708; *Noble* v. *Doughten*, 72 Kansas, 336.

The Nashville Bank also had the right, as between itself and the First National, to revoke the book entries on the ground of mistake. The latter bank, having given no value for the check, and suffered no injury by its reception, the equities of the former were superior. *Guild* v. *Baldridge*, 2 Swan (Tenn.), 295; *Bank of Repub.* v. *Baxter*, 31 Vermont, 101; 5 Cyc. of Law & Pro. 542b. The check was not payment, but only means of payment.

It was a wrong upon the Nashville Bank for the bankrupt, in his condition of insolvency, to have drawn and delivered the check, and especially wrong, after his act of notorious insolvency, not to have notified that bank of the fact. Kerr on Fraud and Mistake, 109; *Mitchell* v. *Warden*, 20 Barb. 253; *Pegulus* v. *Taylor*, 38 Barb. 375; *Choffer* v. *Fort*, 2 Lansing, 81; *Sharkey* v. *Mansfield*, 90 N. Y. 227.

If the First National knew of his state of insolvency, it was *particeps criminis* in not informing the Nashville Bank. *Peterson* v. *Union Bank*, 52 Pa. St. 206.

The First National, independent of any imputation to it of the bankrupt's knowledge, did have knowledge of the insolvency before the contract of deposit was consummated.

The First National, at the time it received the check,

knew of this indebtedness by the imputation of Plant's knowledge. *St. Louis R. Co.* v. *Johnston,* 133 U. S. 566.

The doctrine of imputation exists in all cases where the agent is acting within the scope of his authority. The doctrine does not rest on a presumption that the agent will communicate his information to his principal.

Whether the act of payment itself is considered or the results of the payment, his interests certainly were not adverse to, but were concurrent with, those of the First National.

Even if the doctrine of imputation did rest on the probability of the agent communicating his knowledge to his principal, there was no improbability that the bankrupt would have communicated to the other officers of the bank, had there been any occasion to do so, the fact that he owed another bank.

*Mr. Sloss D. Baxter* for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

R. H. Plant, of Macon, Georgia, kept a deposit account with the American National Bank of Nashville, and, on May 16, 1904, was indebted to it in the sum of $50,000 on paper which matured two or three weeks later. He was generally regarded as a wealthy man, but was in fact insolvent. While so insolvent he, on May 13, 1904, gave to the First National Bank of Macon, of which he was President, a check for $3,000 on account of an indebtedness due by him to it.

The Macon Bank at once mailed the check to the Nashville Bank with instructions to place it to the credit of the Macon Bank. The check was received by the Nashville Bank at 8 o'clock Monday morning, May 16. The letter was opened shortly after nine o'clock, and was credited to the Macon Bank's account about 11 o'clock A. M.,—an hour or so after a petition in bankruptcy had

been filed against Plant in Macon. His failure precipitated a run on the Macon Bank, and, the same day, by direction of the Comptroller of the Treasury, a Receiver was appointed for it under § 5234, Rev. Stat.

The Nashville Bank was not advised of either of these failures, and about 2 o'clock it charged the $3,000 check to Plant's account and the same day mailed to the Macon Bank a letter stating that its account had been credited with $3,000. Four or five days later, having learned of Plant's bankruptcy, it charged off the $3,000, claiming that Plant's insolvency, on May 16, gave to the Nashville Bank the right of set-off even as against the unmatured drafts. *Carr* v. *Hamilton,* 129 U. S. 252, 256.

The plaintiff was subsequently appointed agent of the Macon Bank under Rev. Stat., § 5234, and brought suit against the Nashville Bank for the recovery of the $3,000. Most of the facts were agreed upon, but much evidence was taken for the purpose of showing that the Macon Bank had notice of Plant's insolvency, and at the conclusion of the testimony each party moved that a verdict be directed in its favor. *Beuttell* v. *Magone,* 157 U. S. 154. The court instructed the jury to find for the plaintiff. The judgment was affirmed (185 Fed. Rep. 338) by the Circuit Court of Appeals.

There are some disadvantages of sending a check for collection directly to the bank on which it is drawn, but when such bank performs the dual function of collecting and crediting the transaction is closed and, in the absence of fraud or mutual mistake, is equivalent to payment in usual course. *National Bank* v. *Burkhardt,* 100 U. S. 686, 689. In the present case it was as though an officer of the Macon Bank had presented the check to the Teller of the Nashville Bank and on receiving the money had paid it back over the counter for deposit to the credit of the Macon Bank.

The Nashville Bank, however, claims that there was

here the element of fraud and mistake which entitles it to cancel the credit; insisting that the Macon Bank, having notice that Plant was insolvent, could not collect the check for $3,000 without notifying the Nashville Bank of such insolvency so that it might assert its superior right under its banker's lien and set off the $3,000 deposit against Plant's debt of $50,000.

The law undoubtedly permits an insolvent to prefer one creditor over another and allows such creditor to retain such preferential payment against all persons,— except the Trustee in Bankruptcy, when the payment has been made within four months of the filing of the petition in bankruptcy and with reasonable cause to believe that a preference would be effected. We do not enter upon the question as to whether this right to be preferred is modified by principles of equity or whether the holder of a check, in presenting it to a bank for payment, is bound to give information that the bank's depositor and debtor was insolvent. For in this case it distinctly appears that the officers of the Macon Bank did not know that Plant was insolvent at the time he gave the check, at the time they mailed the check or at the time it was received by the Nashville Bank, nor did they know that Plant was indebted to the Nashville Bank. Such notice, however, is sought to be imputed to the Macon Bank because Plant was its President, and it is argued that what he knew the bank must be considered as knowing.

This presents another phase of the oft-recurring question as to when and how far notice to an agent is notice to his principal. In view of the many decisions on the subject it is unnecessary to do more than to apply them to the facts of this case. If Plant, within the scope of his office, had knowledge of a fact which it was his duty to declare and not to his interest to conceal, then his knowledge is to be treated as that of the bank. For he is

then presumed to have done what he ought to have done and to have actually given the information to his principal.

But if the fact of his own insolvency and of his personal indebtedness to the Nashville Bank were matters which it was to his interest to conceal, the law does not by a fiction charge the Macon Bank, of which he was President, with notice of facts which the agent not only did not disclose, but which he was interested in concealing.

Plant was a private banker in Macon and as such indebted to the First National Bank of Macon, of which he was President and so far dominated as to compel it to take care of the large balances against him in the clearing house, frequently more than 50 per cent. of the $200,000 capital of the Macon Bank. On May 13th Plant was indebted to the Macon Bank on this account between $75,000 and $100,000. A National Bank Examiner was in the city and it was expected that he would examine the books of the Macon Bank within a few days, when this illegal overdraft by the President would appear. Rev. Stat., § 5200; *Evans* v. *United States*, 153 U. S. 584. Plant thereupon gave the Bank checks and commercial paper to pay the balance. It was to his personal interest to conceal any fact which would prevent the Macon Bank from receiving paper in satisfaction of a debt which had been unlawfully contracted by reason of his official position. An element of that interest was that he should conceal not only the fact of his insolvency but the fact of his indebtedness to the Nashville Bank, lest the Macon Bank should thereby refuse to take the $3,000 check at its face value. Without, therefore, inquiring as to what would have been the duty of the Macon Bank had it known of Plant's insolvency and indebtedness on the $50,000 drafts, we hold that as it had no such knowledge in fact it was not charged with such knowledge in law. The judgment is

*Affirmed.*