The Manufacturers Life Insurance Company of Toronto, Canada, demandante y apelante, *v.* Lorenzo Irizarry y su esposa Doña Juana Rosenda Quiñones; Buenaventura Domenech González y Luis Maldonado Santiago, demandados y apelados.

No. 3465.—*Visto.* Marzo 6, 1925. *Resuelto:* Mayo 25, 1925.

1. Seguros — Impedimento (*Estoppel*), Abandono (*Waiver*), o Convenios que Afectan el Derecho a Anular o Confiscar la Póliza—Actos de los Agentes de la Compañía. — Una compañía de seguros no está impedida (*estopped*) de impugnar la condición de salud de un asegurado que, al solicitar la póliza, manifestó falsamente que gozaba de perfecta salud, a pesar de que la idea del seguro partió del agente solicitador de la compañía y que dicha condición fué certificada como buena por el médico de ésta. (*Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U.S. 613, 60 L. ed. 1202, seguido.)

2. Seguros—Cancelación, Renuncia, Abandono, o Rescisión de la Póliza— "Laches" en Pedir la Cancelación de una Póliza. — No constituye "laches" de parte de una compañía aseguradora el pedir el 30 de noviembre la nulidad de una póliza solicitada en abril 19 del propio año y expedida en marzo, máxime cuando se trata de una situación general anormal y la póliza establecía que "después que esta póliza haya estado en vigor dos años completos, será incontestable, (excepto en caso de fraude). . . . . ''

3. Seguros—Anulación de Póliza por Engaño, Fraude o Quebrantamiento de Garantía (*Warranty*) o Condición—Personas Afectadas por la Anulación.—Si una póliza de seguro de vida se expidió tomando como cierta la falsa afirmación do un hecho esencial, probada la falsedad, cae por su base con todas sus consecuencias el contrato, incluso los derechos de terceras personas en el mismo.

4. SEGUROS — ACCIONES SOBRE PÓLIZAS — PRUEBAS — PESO Y SUFICIENCIA DE LA
   MISMA.—Apreciada la prueba en este caso, *se resolvió* que el juez de distrito
   había cometido error manifiesto en su apreciación, revocándose la sentencia
   con costas a los demandados.

SENTENCIA de *R. Díaz Cintrón*, J. (Ponce), declarando sin lugar la
demanda, sin costas. *Revocada, declarándose con lugar la de-
manda, con costas.*

*Daniel F. Kelley* y *Alberto S. Poventud*, abogados de la apelante;
*José Rosario Gelpí* y *Sergio G. Gelpí*, abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del
tribunal.

La demandante, una compañía de seguros, inició este
pleito para cancelar una póliza que expidiera a favor del
demandado Irizarry, basándose en que Irizarry aseguró que
se encontraba en perfecta salud al solicitar el seguro cuando
lo cierto era que se encontraba enfermo. Contestaron los
demandados sosteniendo la verdad de lo dicho en la solici-
tud de seguro y alegando varias defensas especiales. Fué
el pleito a juicio y la corte dictó sentencia favorable a los
demandados. La demandante interpuso entonces el presente
recurso de apelación. Estudiaremos primero las "defen-
sas" de los demandados.

[1] Es la primera que la compañía demandante está im-
pedida de impugnar la condición de salud del demandado·
Irizarry por el hecho de que dicha condición fué certificada
como buena por médicos elegidos libremente por dicha com-
pañía, luego de haber sido hecha la solicitud a petición y
requerimiento de la propia compañía actuando por su agente.

Hemos examinado los casos citados por la parte ape-
lada en apoyo de su contención. No son exactamente apli-
cables. A nuestro juicio la luz que debe guiarnos surge
clara del caso de *Mutual Life Insurance Co.* v. *Hilton-Green,*
241 U.S. 613, 60 L. ed. 1202, citado por la parte apelante.

Después de exponer con precisión los hechos, la Corte
Suprema de los Estados Unidos, por medio del Juez Mc-
Reynolds, se expresó así:

"Consideradas lo más favorablemente posible, las arriba citadas manifestaciones inexactas contenidas en la solicitud, constituyen representaciones materiales; y, de no aparecer otra cosa, si el asegurado sabía que eran inciertas cuando las hizo, anulan la póliza sin necesidad de ulterior prueba de un verdadero propósito consciente de defraudar. Moulor v. Am. Life Ins. Co., 111 U.S. 335, 345; Phoenix Life Ins. Co. v. Raddin, 120 U. S. 183, 189; Aetna Life Ins. Co. v. Moore, 231 U.S. 543, 556–557; May on Insurance, 4th ed., sec. 181.

"La regla general que imputa al mandante el conocimiento del mandatario está bien establecida. La razón fundamental de esa regla es que un tercero inocente puede muy bien presumir que el mandatario cumplirá con su deber e informará sobre todos los hechos que afecten los intereses de su mandante. Pero esta regla general no es aplicable cuando el tercero sabe que no existe fundamento alguno para la presunción ordinaria—cuando tiene conocimiento de circunstancias que claramente indican que el mandatario no habrá de informar a su mandante. El propósito de la regla es proteger a los que actúan de buena fe pero no servir de escudo a transacciones leoninas. The Distilled Spirits, 11 Wall. 356, 367; American Surety Co. v. Pauly, 170 U.S. 133, 156; American National Bank v. Miller, 229 U.S. 517, 521, 522; Mechem on Agency, 2d ed., sec. 1815.

"El artículo 2765 de los estatutos de Florida, arriba citado, tiene por objeto designar como agentes a ciertas personas que de hecho actúan en alguna forma a nombre de una compañía de seguros; pero no fija el alcance de su autoridad a los efectos de las relaciones entre la compañía y terceras personas y, ciertamente, no convierte agentes especiales con facultades limitadas en agentes generales con facultades ilimitadas. Asumimos que Hogue, Torrey y los médicos examinadores fueron de hecho designados agentes de la compañía con poder para obligarla dentro de sus facultades aparentes; y en esas circunstancias el estatuto no afecta su verdadera relación hacia las partes. Véanse Continental Ins. Co. v. Chamberlain, 132 U.S. 304, 310; New York Life Ins. Co. v. Russell, 77 Fed. Rep. 94, 103; Wood v. Firemen's Insurance Co.; 126 Massachusetts, 316, 319; John R. Davis Lumber Co. v. Hartford Fire Ins. Co., 95 Wisconsin, 226, 234–235.

"El asegurado, cuando menos, permitió conscientemente que una solicitud conteniendo falsas representaciones materiales fuera presentada por agentes subordinados a oficiales de la compañía de se-

guros en circunstancias que él sabía excluían cualquier probabilidad de que los verdaderos hechos fueran revelados; y más tarde aceptó pólizas que él tenía que comprender habían sido expedidas confiando en manifestaciones a la vez falsas y materiales. Nada podía reclamar por razón de aquellos informes que tuvieran los subordinados desleales. Además, las falsas representaciones acompañaban y formaban parte esencial de las pólizas finalmente aceptadas. El no repudió, y por consiguiente aceptó y aprobó, las representaciones en que estaban basadas. Fuera de toda duda el que solicita un seguro debe ejercitar hacia la compañía la misma buena fe que de ésta puede buenamente exigirse. La naturaleza de las relaciones requiere que ambas partes jueguen limpio. New York Life Ins. Co. v. Fletcher, 117 U.S. 519, 529, 533, 534; Assurance Co. v. Building Association, 183 U.S. 308, 361; U. S. Life Ins. Co. v. Smith, 92 Fed. Rep. 503.

"Considerada la prueba a la luz de una correcta apreciación de la ley, no es bastante para fundar un veredicto contra la peticionaria y la corte sentenciadora debió haber instruído que se rindiera uno en su favor.

"La sentencia de la Corte de Circuito de Apelaciones es revocada y el caso devuelto a la Corte de Distrito de los Estados Unidos para el Distrito Norte de Florida, para ulteriores procedimientos de conformidad con la presente opinión."

En este caso concreto sometido a nuestra consideración se alegó en la demanda y se probó en el juicio que en su solicitud, que forma parte de la póliza, el demandado Irizarry expresó: "Que por la presente declaro y convengo que me hallo actual y generalmente gozando de perfecta salud." Si el demandado sabía que esto no era así, no importa que la idea del seguro no partiera en principio de él, sino de un agente solicitador de la compañía, ni que el médico de ésta certificara sobre su buen estado de salud. Bien se combinara el demandado con el agente y el médico de la compañía de modo expreso para defraudar a ésta, ya actuara por su propio acuerdo, necesariamente sabía que estaba induciendo a error a la oficina central de la compañía puesto que su condición de buena salud era un requisito *sine qua non* para que la póliza fuera finalmente expedida y por la actitud del agente al solicitar el seguro y del médico al certificar

favorablemente, dado su manifiesto estado de mala salud que a nadie podía engañar, necesariamente tenía que deducir que nada contrario a su falsa afirmación de buena salud sería comunicado a los oficiales de la compañía.

[2] La segunda defensa alegada es la de *laches.* Se sostiene que desde el día en que el demandado Irizarry presentó su solicitud hasta que se le expidió la póliza, la demandante tuvo tiempo de investigar las condiciones de salud del asegurado y al no hacerlo así voluntariamente abandonó su derecho.

Las pruebas indican una situación anormal en el distrito en que se tomó la póliza de que aquí se trata. Investigando otros casos, la compañía recibió aviso de las circunstancias que concurrieron en éste. Inmediatamente lo investigó. Ofreció devolver la única prima pagada. No se avinieron los demandados y se inició el pleito. La solicitud fué firmada el 19 de abril de 1923. La póliza expedida el 4 de mayo siguiente. Y el pleito iniciado el 30 de noviembre del propio año. Hay una cláusula en la póliza que dice: "Después que esta póliza haya estado en vigor dos años completos, será incontestable, (excepto en caso de fraude), . . . ." Tales circunstancias no revelan abandono. Las compañías de seguro actúan en radios extensos. Aceptan generalmente los informes de sus agentes, esparcidos a veces por varias naciones, como verdaderos, y por regla general también por ellos quedan obligados, pero cuando descubren la base falsa del contrato dentro del período marcado en el mismo, tienen derecho a su cancelación.

[3] La última de las defensas especiales la presentan los demandados Domenech y Maldonado, alegando su condición de terceros por no haber intervenido en la solicitud.

No podemos percibir que tal condición exista en un caso de esta naturaleza. Si la póliza se expidió tomando como cierta la falsa afirmación de un hecho esencial, probada la falsedad cae por su base, con todas sus consecuencias, el contrato.

[4] Despejada la situación en cuanto a las defensas especiales alegadas, pasaremos al examen de la prueba. En la opinión emitida para fundar su sentencia, dice el juez de distrito:

"Pero como dejamos dicho, el punto culminante, esencial es el hecho de que el demandado sabía que estaba enfermo, que a sabiendas de ello lo ocultó con el propósito de sorprender la buena fe de la demandante, que de haberlo sabido la compañía aseguradora no hubiera concertado el contrato de seguro de vida ni expedido la póliza a que en el pleito se hace referencia, pero este hecho no aparece probado, según se puede ver por el análisis que se ha hecho de la prueba testifical y documental practicada por la demandante, razón por la cual la Corte estima que no se ha probado satisfactoriamente este hecho de la demanda y por lo cual la declara sin lugar sin especial condenación de costas."

Veamos si está o no justificado el juez en su criterio.

José B. Gotay, de profesión médico, declaró que conocía a Irizarry desde hacía cinco o seis años. Alrededor de la fecha de la solicitud en un encuentro que tuvo con él observó que estaba delgado, color seroso y que tosía a menudo, con expectoración bastante grande. No lo examinó clínicamente y no puede asegurar cuál era su enfermedad pero asegura que "de algo pulmonar estaba padeciendo." Su aspecto era enfermizo, sus hombros estaban inclinados hacia adentro, sus orejas pálidas. Volvió a verlo luego. Algunos días antes del juicio lo encontró en su casa acostado en una hamaca, le dijo que estaba enfermo, que no podía salir. En su opinión, en la actualidad—fecha del juicio, mayo, 1924—, estaba tuberculoso.

Ramón Pérez Brun, dijo que conocía a Irizarry desde hacía veinticinco años, que cuando lo vió en 1922 lo encontró "al lado de su casa: yo fuí a un negocio de gandules y estuvimos hablando, y yo le dije: tú estás muy mal, muy enfermo, te debes ir a un hospital; y dice: no puedo irme a un hospital ahora; lo encontré con un pañuelo amarrado en la frente: estaba completamente mal de salud." Desde el

1922 las veces en que lo vió lo encontraba cada vez más decaído.

Antonio Purcel, amigo y pariente de Irizarry, dijo que éste había sido siempre un hombre achacoso, un hombre enfermizo. "Casi siempre se veía conmigo y le preguntaba, ¿cómo está de salud? y decía: siempre enfermo; voy para Ponce a buscar medicinas."

Manuel Vélez Gotay, declaró que Irizarry en abril de 1923 era un hombre raquítico, delgado, pálido.

El otro testigo de la demandante, Bernardino Pérez, llamado a declarar sobre el estado de salud de Irizarry, dijo que éste era delgado y pálido, pero que no podía precisar que padeciera de enfermedad alguna.

La deposición tomada al demandado Irizarry es larga y difícil de resumir. Es de mucha importancia especialmente para penetrar no sólo en su estado de salud, sino en su condición económica y en los motivos que tuvo para tomar la póliza.

La prueba de los demandados tiende a presentar a Irizarry como un hombre que siempre fué delgado y pálido pero fuerte y saludable. Reconoce el mal estado de su salud en el momento del juicio, pero trata de explicarlo como debido a cierta caída que sufriera después de hecha la solicitud para el seguro.

La impresión que en nuestra conciencia de juzgadores ha producido el examen de la prueba, es distinta a la del juez sentenciador. A nuestro juicio puede asegurarse que el mal estado de salud del demandado Irizarry al tiempo de firmar la solicitud y de pagar la prima del seguro, era evidente y conocido por él. No cabe engaño posible.

Y esa convicción se robustece cuando se examinan las demás circunstancias que surgen de la prueba. Irizarry era un pobre campesino que vivía en una casita de una pequeña finca dedicada a frutos menores y tenía que comprar fuera la leche que necesitaba para alimentarse. Aceptando lo más favorable, lo más que ganó cuando estuvo colocado con los

hermanos Gelpí fué quince pesos semanales. Una impresión de sorpresa inexplicable es la que produce el conectar a una persona en las condiciones de Irizarry con una póliza de seguro por la suma de diez y ocho mil dólares que requería el pago de una prima anual de cerca de ochocientos dólares. La explicación que da Irizarry de su encuentro con Tellechea, el agente de la compañía, con quien habló para comprar una finquita para asegurar el pan de sus hijos, desistiendo a virtud de las sugestiones del agente para tomar una póliza de $18,000, en vez de favorecer el caso de los demandados, hace más fuerte el de la demandante.

Toda la explicación lógica de esta transacción se encuentra en verdad cuando aparecen en escena los demandados Maldonado y Domenech. Dispuso Irizarry que de los $18,000 sólo $500 fueran para su esposa; $12,000 destináronse a Domenech; $5,500 a Maldonado. La explicación que da para ello no resiste al análisis, especialmente después de juzgar las declaraciones de los propios Maldonado y Domenech, en relación con las del doctor Font y Guillot, Gerente de la compañía demandante en Puerto Rico, y William E. Young, Gerente del Departamento Extranjero de la propia compañía que vino a esta Isla con motivo de la situación anormal a que nos referimos en otra parte de esta opinión.

Como se desprende de las palabras del propio juez sentenciador, no se trata aquí de un caso de evidencia contradictoria en que el juez decidiera el conflicto, sino de uno en que el juzgador original estimó que aún dando crédito a la prueba de la demandante, no era suficiente, pero deseamos consignar que no sólo estimamos la prueba suficiente sino que aun cuando se hubiera resuelto el conflicto por el juez sentenciador, llegaríamos a la conclusión de que procedía la revocación de la sentencia por haberse cometido error manifiesto en la apreciación de las pruebas. Estas revelan una situación tal, tan clara y evidente, en el sentido del engaño, que no es posible que un tribunal de justicia deje subsistente el contrato celebrado de ese modo.

*Debe revocarse la sentencia apelada y dictarse otra de-
clarando la demanda con lugar, con las costas a los deman-
dados.*