**BOSWORTH v. MARYLAND CAS-
UALTY CO.
No. 5248.**

Circuit Court of Appeals, Seventh Circuit.

Jan. 3, 1935.

T. H. Spence and Arthur Wickham, both of Milwaukee, Wis., for appellant.

James E. Coleman, of Milwaukee, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal is from a decree of the District Court requiring appellant to deliver six bonds as trust funds of the estate of Ira M. Martin to appellee under subrogation to that estate.

The facts material to this controversy, as found by the court, are as follows: Joseph H. Tayler and Minnie A. Martin had acted as trustees of the estate of Ira M. Martin, deceased, from 1916 to August 18, 1931, under the jurisdiction of the Brown County Court of Wisconsin, and during that time appellee was surety of their bond. On the last named date the trustees failed to account for the trust property to that court, whereupon Minnie A. Martin resigned and Tayler was removed, and their successor was appointed. Suit was thereupon brought against Martin, Tayler, and appellee as surety, to recover the trust property or its value, and judgment was recovered for $45,000 which was paid by appellee as surety, and that amount is still due

and owing to appellee from Martin and Tayler.

When the letters of trust were issued to Tayler he was an officer of the McCartney National Bank of Green Bay, Wisconsin, and later, while acting as trustee, he became the president of the bank, and as trustee he kept all property of the trust estate in his office or in the vault of the bank.

On December 18, 1930, Tayler as such trustee held for the use and benefit of the trust estate six negotiable bonds of the aggregate face value of $6,000, which were the property of the trust estate. At that time Tayler, as president of the bank, was its chief executive officer in active charge of supervising and directing all the business transacted by the bank by its other officers and employees. On that date the bonds referred to were given by Tayler to Bailey, an assistant cashier, with a deposit slip marked "Deposited by J. H. Tayler, with the McCartney National Bank, Contl. Ill., $5,750," with instructions to credit that amount to his personal account and to hold the bonds for quotations, subject to confirmation by Tayler. At that time the personal account of Tayler was overdrawn and he was otherwise indebted to the bank in excess of $5,750. On February 9, 1931, the bonds were sent by Bailey to the Continental Illinois Bank and Trust Company for quotations subject to confirmation by Tayler. There the bonds remained until after the McCartney National Bank was closed and placed in the custody of a receiver. They were later returned to the receiver and were in his possession at the time of trial.

The court concluded that upon the payment of the judgment by appellee it became invested with all right, title and interest to and in all property of the trust estate which was wrongfully converted, misappropriated or stolen, and had a right to recover it when found and identified. The court further concluded that the bonds were obtained by the McCartney bank through the fraudulent act of its president, Tayler, who accepted them as a deposit on behalf of said bank, as its agent and sole representative in said transaction, and caused credit to be given to an overdraft in Tayler's personal account, and that because of the knowledge of the fraud by its agent and sole representative, the bank was charged with the knowledge of its agent, Tayler, who knew that the bonds were property of the Martin trust estate, and by reason of such fraud the bank did not acquire title to or interest in them, and was not a holder in due course. The court therefore held that the bonds were the property of the Martin trust estate at the time they came into possession of the bank, and by operation of law, upon payment of their value to the trust by appellee, it became the owner of the bonds and was entitled to have and receive their physical possession as its property, together with any money received by the bank upon any coupons attached to the bonds on December 18, 1930.

Appellant contended that the court erred (1) in holding that Tayler as agent of the bank accepted the bonds on its behalf, and (2) that Tayler's knowledge that the bonds were the property of the Martin estate of which he was trustee was imputed to the bank. In support of those contentions, appellant relied upon the following propositions of law which we concede are amply supported by the authorities which he cites. (1) When an agent is committing a fraud entirely for his own benefit and not for the principal's benefit, the principal should not have imputed to him knowledge of the agent's acts, for under those circumstances the agent would not be acting within the scope of his authority. (2) The payment of an agent's personal indebtedness to his principal is an act done to subserve his own interests only, and is not in the interest of his principal, hence the agent's knowledge is not imputed to the principal. (3) When an agent commits a fraud for his own benefit, and designedly against his principal, and it is essential to the existence or possibility of such fraud that he should conceal the real facts from his principal, a presumption arises that he did not communicate the facts to his principal. (4) Where an officer commits an independent fraud for his own benefit and designedly against his principal, it will be presumed that the officer dealt with some other agent of the corporation, for to have dealt with himself would have been wrongful and unlawful.

■■ The facts in this case are clearly distinguishable from those in the cases cited. Here there was no fraud designed against the bank. On the contrary, the transaction was intended to and did benefit the bank, and not Tayler, except as it tended to relieve him temporarily from merited criticism, and perhaps prosecution, for the manner in which he, as president, had conducted the bank's business. It was his paramount duty to see that the debts owing to the bank were paid if possible, and that overdrafts were promptly and properly cared for, and especially was this true with respect to his own debts and overdraft. On December 18, 1930, both he and the bank

were in a precarious financial condition, of which fact he must have had full knowledge. It was under those circumstances that the fraudulent transaction occurred, and it is obvious that Tayler was then attempting to benefit the bank, and his actions with respect thereto, excepting the misappropriation of the Martin trust property, were within the scope of his authority and duty. The transaction was in no way detrimental to the bank and of no benefit to Tayler, except as it postponed his day of wrath. The record discloses that practically the entire deposit of $5,750 was consumed by Tayler's overdraft. It is true that, at the time of the deposit, his overdraft of record showed $2,108.51. However, at the close of that day, his balance was but $111.49. It was customary, however, for the teller at the bank to hold Tayler's checks in the cage, and not charge them immediately to his account as cash items, and for that reason, his individual ledger account did not always correctly reflect the amount of his overdraft. In any event, at the time of the deposit, Tayler owed the bank considerably more than the deposit.

It is contended by appellant that under the ruling in American National Bank of Nashville v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310, the knowledge of Tayler, as agent, should not be imputed to the bank because Tayler was merely paying his indebtedness to the bank, and thereby subserving his own interest, and not that of the bank. That case was discussed in Curtis, Collins & Holbrook Company v. United States, 262 U. S. 215, 43 S. Ct. 570, 67 L. Ed. 956, and it was considered inapplicable where the agent was the sole agent for the principal in the engagement of a common adventure, and the Court held that where the principal insisted on retaining the fruits of the adventure, it must be charged with the knowledge of the agent through whom the fruits came. See also 4 Fletcher Cyclopedia of Corporations (1918) § 2251, at page 3496. We think this principle must govern the facts here. Aside from Tayler's other relationships, he and the bank were engaged in the common adventure of banking, and in the specific common adventure of having Tayler's overdraft paid, and if Tayler was the sole agent of the bank with respect to that transaction, his knowledge must be imputed to the bank. Kean v. National City Bank (C. C. A.) 294 F. 214;

Schneider v. Thompson (C. C. A.) 58 F.(2d) 94; First National Bank v. Blake (C. C.) 60 F. 78. The finding of the court that he was the sole agent of the bank with respect to the transaction is supported by material evidence, and we can not disturb that finding. It is true that the bonds and the deposit slip, which was made out by Tayler, were delivered by him to another employee or officer of the bank for the purpose of making the records of the transaction, but they were accompanied by instructions from Tayler as to what should be done, that is to say, he told the assistant cashier, Bailey, to hold the bonds until Tayler could get quotations on them. He further instructed that immediate credit be given on his account for the amount represented by the deposit slip. Whether these instructions were given to Bailey or another assistant cashier, or both, is not material, for the fact remains that his instructions were carried out to the letter. The bank's bond account, so far as the record discloses, showed no purchase of these bonds. They were carried as a "Bank's sundry" item in the assistant cashier's cage, and Tayler's personal account was credited with the deposit slip, and that credit charged to the bank's sundry account. There the bonds remained until February 9, 1931, because Tayler had given no further instructions. They were then sent to the Continental Illinois Bank at Chicago for quotations, accompanied by a letter from Bailey. A reply to that letter was delivered by Bailey to Tayler, who gave no further instructions. It is to be further noted that within four days after the payment of Tayler's overdraft by the deposit of December 18, his overdraft exceeded $5,600, and Cashier Bailey testified that at no time did he approve of Tayler's overdrafts. These facts fully substantiate other material testimony that Tayler directed the business of the bank as a superior officer to all others of its employees and agents, and that, in fact, he was the bank. In this entire transaction there is not the slightest indication that any officer or employee of the bank, except Tayler, exercised any independent choice or judgment.

We think the court was quite justified in holding that Tayler, as sole agent of the bank, received the bonds for the bank, and that his knowledge of the fraud was properly imputed to the bank.

Decree affirmed.