**VAIL NATIONAL BANK,**
**Plaintiff–Appellee,**

v.

**Sol FINKELMAN, Defendant–Appellant.**

**No. 89CA1075.**

Colorado Court of Appeals,
Div. III.

Aug. 30, 1990.

Rehearing Denied Oct. 4, 1990.

Vinton, Slivka & Panasci, Michael J. Healey, Denver, for plaintiff-appellee.

Hall & Evans, Charles Greenhouse, Denver, for defendant-appellant.

Opinion by Judge TURSI.

Sol Finkelman, defendant and maker of a check, appeals a judgment in favor of Vail National Bank awarding it recovery on the check. He contends that the trial court erred in failing to rule, as a matter of law, that the knowledge of the majority shareholder and director of the bank was imputed knowledge of the bank and that, therefore, it was not a holder in due course or, alternatively, in refusing to tender an instruction to the jury regarding the issue of imputed notice. We affirm.

During the pertinent time period, Joseph Penner was the majority shareholder of the bank. His ownership of 58% of the bank's stock placed him in the position of controlling shareholder; however, approximately 109 other shareholders also owned interests in the bank.

Penner served as one of the bank's five directors. However, he did not appoint or terminate officers of the bank or members of the board, nor did he serve as chairman of the board or as an officer of the bank. The undisputed evidence in the record further establishes that Penner did not control the board nor exercise any control over the day-to-day operations of the bank.

Despite his involvement in and responsibilities regarding the bank, Penner was primarily occupied as a businessman who constructed buildings that were subsequently leased to the U.S. government as post office facilities. Defendant is a C.P.A. who, over the years, purchased certain of Penner's properties as partnership investments. A business transaction between Penner and defendant underlies the action on appeal.

On December 29, 1987, defendant executed and gave Penner a check in the amount of $445,000 to pay off a partnership debt owing to Penner for purchase of a post office property. The check was drawn on defendant's personal account, made payable to Penner, and postdated December 30, 1987. At the time the check was drawn, defendant's personal account contained approximately $10,000.

Defendant knew that Penner was experiencing financial difficulties. He therefore acquiesced to Penner's request that the check be delivered notwithstanding the insufficiency of funds in the account. He did so upon the belief that while he was vacationing over the holidays, his secretary would receive and deposit into his account partnership contributions necessary to pay the debt.

Defendant testified that Penner knew that the account on which the check was written did not contain sufficient funds to cover payment of the check. Moreover, he testified that delivery of the check was specifically conditioned upon Penner's promise that the check would not be presented for payment until the partnership contributions had been received and deposited in his personal account. He further testified that Penner acknowledged the conditional nature of the check's delivery and agreed not to cash it until he received permission from defendant's secretary to do so.

Though not notified that defendant's account contained deposits sufficient to cover the check's payment, on January 6, 1988, Penner presented the check to the bank's president and chief executive officer, and requested him to "cash" the check. Penner did not inform the bank's president that the account on which it was drawn

contained insufficient funds, nor did the bank's president possess independent knowledge of the conditional delivery of the check.

In undisputed testimony, the bank's president testified that Penner had telephoned to notify him that "several checks would be coming into [the] bank against Mr. Penner's account and there were not sufficient funds in the account to cover those checks." His testimony further established that Penner had written 113 checks on his account which the bank had refused to pay, returning them to payees, owing to insufficient funds in Penner's account.

Later that day, Penner visited the bank's president at the bank and requested him to grant immediate credit on the check from defendant. Penner represented that the check was good, and he invited the bank's president to telephone defendant to confirm that the check would clear. But, the bank's president declined to call defendant or his bank and, instead, deposited proceeds of the check into Penner's account and authorized payment on the checks drawn against it. He testified that at the time he felt that his actions were within the scope of his authority and that he was not affording Penner preferential treatment.

When the check was processed for collection, defendant's bank refused to honor it, and the bank subsequently commenced this action, seeking recovery from defendant on the basis that it held the check as a holder in due course.

At the close of the evidence in a trial to a jury, defendant moved for a directed verdict on the grounds that Penner's knowledge of the conditional delivery of the check was imputed to the bank, thus defeating bank's status as a holder in due course. He specifically requested the court to rule that Penner's domination of the transaction in which the bank's president gave immediate credit to the check, required imputing Penner's notice of the defendant's defenses to the bank.

The trial court denied the motion on the grounds that the evidence did not support the proposition that Penner dominated the transaction, and it held that Penner's knowledge could not be imputed to the bank, as a matter of law. The court did allow the jury to consider the issue whether Penner's actions were in fact adverse to the interests of the bank for purposes of imputing his knowledge to the bank. However, it refused to submit defendant's tendered instruction which would have permitted imputing Penner's knowledge of defendant's defense to the bank upon a finding that Penner "dominated" or "controlled" the transaction without a finding that he was acting within the scope of his employment, even if acting solely for himself and not for the bank.

A general verdict form was given to the jury, and it found for the bank.

■ Defendant argues that the trial court erred when it failed to rule that because the check was subject to a defense about which Penner, as bank's "controlling agent" possessed knowledge, the bank should be charged with Penner's knowledge of that defense as a matter of law, thus vitiating its status as a holder in due course. We disagree.

A holder in due course is a holder who has taken the instrument for value, in good faith, and without notice that it is overdue, or has been dishonored, or of any defense against or claim to it on the part of any person. *See* § 4–3–302(1), C.R.S. If a holder successfully meets this and other criteria, it may recover the amount of the check from the maker as a holder in due course. *See* § 4–3–301, C.R.S.

■ If, however, a holder takes a check with notice of a maker's defense, it will be denied status as a holder in due course. *Ackmann v. Merchants Mortgage & Trust Corp.*, 659 P.2d 697 (Colo.App.1982), *rev'd on other grounds sub nom. Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599 (Colo.1984).

■ Notice to an agent of a corporation which is obtained while the agent is acting within the scope of his authority generally constitutes notice to the principal. *Mayer Oil Co. v. Schnepf*, 100 Colo. 578, 69 P.2d 775 (1937). But, an exception to the rule applies when an agent acts adversely to his principal.

This exception is based on the theory that the agent cannot be presumed to com-

municate his knowledge to the principal when he is acting in his own interests and against the interests of the principal. *American National Bank v. Miller*, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310 (1913); *McFerson v. Bristol*, 73 Colo. 214, 214 P. 395 (1923); Restatement (Second) of Agency § 282(1) (1958). However, the adverse interest exception is modified by what is commonly referred to as the "sole actor" or "dominant person" doctrine.

The sole actor doctrine generally states that if the adverse agent is also the sole representative of the principal in the transaction in question, the principal will be charged with the agent's knowledge if the principal seeks to retain the benefit of the transaction. *See* 3 W. Fletcher, *Corporations* § 827 (1986). In other words, if knowledge of the agent in an adverse interest case is to be imputed to the principal, the agent must, in fact, be the sole representative of the principal during the transaction in question, or have such dominance over the principal as to be its *alter ego*. *See, e.g., Anderson v. General Life Insurance Co.*, 141 F.2d 898 (6th Cir.1944).

In *American National Bank v. Miller, supra,* the applicable rules were succinctly summarized by the Supreme Court in a comparable situation. It held that if the agent (there a bank president) in the scope of his office had knowledge of a fact which it was his duty to declare and not to his interest to conceal, then his knowledge was to be treated as that of the bank. He was then presumed to have done what he ought to have done and to have actually given the information to his principal. However, if the facts surrounding the transaction were matters which were to his interest to conceal, the law would not by fiction charge the bank, of which he was president, with notice of the facts which he not only did not disclose, but which he was interested in concealing. *American National Bank v. Miller, supra.* For our supreme court's acknowledgement of this rule, *see McFerson v. Bristol, supra.*

Hence, the question which we must resolve is whether the trial court properly denied defendant the defense of sole or dominant actor.

When addressing the propriety of a trial court's denial of the sole actor defense, we must apply the standard for granting of directing verdicts and consider the evidence and every reasonable inference to be drawn therefrom in the light most favorable to plaintiff. Only if the evidence compels the conclusion that the minds of reasonable persons could not be in disagreement and that no evidence or legitimate inference would support a jury verdict for plaintiff will the granting by the trial court of a directed verdict be sustained. *See* C.R.C.P. 50; *Romero v. Denver & Rio Grande Western Ry. Co.*, 183 Colo. 32, 514 P.2d 626 (1973).

Here, the evidence without substantial refutation demonstrated that Penner was acting in his individual capacity and was not acting within the scope of his authority as agent of the bank when he requested the bank's president to cash the check. Moreover, he was clearly seeking to further his own interests at the expense of the bank when he requested immediate credit for a check which he had reason to believe would not be honored by defendant's bank. Most significantly, Penner was not the sole representative of the bank in the transaction. The bank's president handled the transaction on behalf of the bank, and he made the decision authorizing the bank to extend immediate credit to Penner.

Consequently, when viewed in the light most favorable to the defendant, there is not sufficient evidence upon which Penner can be held to be the sole actor in this transaction. *See Romero v. Denver & Rio Grande Western Ry. Co., supra.*

The alternative issue which defendant proposes as controlling is whether Penner's conduct during the transaction with *another* representative of the principal was so "dominating" that it rose to the level of control required by the sole actor doctrine. While domination may constitute a valid application of this doctrine, to be available it is reached by application of the "alter ego" theory. *See Anderson v. General Life Insurance Co., supra.*

The trial court correctly determined that the evidence, when viewed in the light most

favorable to either the defendant or the bank, would not sustain a finding that Penner dominated or controlled the transaction. The substantially uncontradicted evidence instead establishes that Penner acted in his own interests and adverse to the interests of the bank, that Penner was not the bank's sole representative in the transaction, and that the bank's representative in the transaction exercised independent judgment when he authorized credit on the check, precluding "domination" by Penner. Therefore, we conclude that the trial court properly denied defendant's motion for directed verdict. *See Romero v. Denver & Rio Grande Western Ry. Co., supra.*

Further, having eliminated the issue of whether the sole or dominant actor doctrine was applicable at the close of the evidence, the trial court properly refused to instruct the jury on an issue which was no longer in dispute. *See Hamilton v. Hardy,* 37 Colo. App. 375, 549 P.2d 1099 (1976).

The judgment is affirmed.

NEY and DUBOFSKY, JJ., concur.