**Donald M. ROWE, J. Rowe, Masella B. Rowe, and California Soap Co., Inc., Plaintiffs,**

v.

**MARIETTA CORPORATION and John Nadolski, Defendants.**

**No. 92–2963–D.**

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 7, 1996.

Alan E. Glenn, John McQuiston, II, Evans & Petree, Memphis, TN, for Donald M. Rowe.

Jim N. Raines, Glanker Brown Gilliland Chase Robinson & Raines, Memphis, TN, Benjamin E. Rosenberg, Shereff Friedman Hoffman & Goodman, New York City, for Marietta Corporation.

Abigail Pessen, Scoppetta & Seief, New York City, for John S. Nadolski.

## ORDER DENYING PLAINTIFF DONALD ROWE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY

DONALD, District Judge.

Before the court is the motion of plaintiff Donald M. Rowe (Rowe) for partial summary judgment as to liability on Count X (fraudulent inducement) of the Second Amended Complaint (SAC) under Federal Rule of Civil Procedure 56(a) and (c).

At all times relevant to the disposition of this motion, defendant Marietta Corporation (Marietta) was a publicly-owned corporation. The business of Marietta included the design, manufacture and distribution of guest amenity items for the travel and lodging industry. Marietta's stock was registered with the Securities Exchange Commission (SEC) and was traded on the National Association of Securities Dealers Exchange (NASDAQ), a national exchange regulated by the SEC.

Pursuant to 15 U.S.C. § 78m(a) and 17 C.F.R. §§ 13 and 1, respectively, Marietta was required to file quarterly (10–Q) and annual (10–K) reports with the SEC. One purpose in requiring public companies to file these reports is to provide the public with true information on the financial condition of the companies listed on public exchanges. 15 U.S.C. § 2 (1934).

Defendant John Nadolski, while acting as President, Chief Executive Officer, and Director of Marietta, did:

1. unlawfully, knowingly and wilfully make and cause to be made false and misleading statements as to material facts in the quarterly report on Form 10–Q for Marietta, for the first quarter of the fiscal year ended September 30, 1989, said quarter covering the months of October, November and December, 1988, which was filed with the SEC on or about February 14, 1989, in violation of 15 U.S.C. §§ 78m(a) and 78ff, 18 U.S.C. § 2, and 17 C.F.R. § 240.13a–13;

2. unlawfully, knowingly and wilfully make and cause to be made false and misleading statements as to material facts in the annual report on Form 10–K for Marietta, for the fiscal year ended September 30, 1989, which was filed with the SEC on or about December 28, 1989, in violation of 15 U.S.C. §§ 78m(a) and 78ff, 18 U.S.C. § 2, and 17 C.F.R. § 240.13a–1;

3. unlawfully, knowingly and wilfully, by use of means and instrumentalities of interstate commerce and the mails, directly and indirectly, on or about and between February 14, 1989 and November 6, 1989, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, that is, the stock of Marietta, and (a) employ a device, scheme and artifice to defraud, and (b) make untrue statements of material facts and omit to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engage in acts, practices and a course of business which would and did operate as a fraud and deceit upon Tucker Anthony Corporation and the public, in connection with the purchase and sale of Marietta stock, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 18 U.S.C. § 2, and 17 C.F.R. § 240.10b–5; and,

4. unlawfully, knowingly and wilfully falsify, conceal and cover up by trick, scheme and device a material fact, and make false, fictitious and fraudulent statements and representations, and make use of a false writing and document to contain a false, fictitious and fraudulent statement and entry, to-wit: the overstatement as to sales reported in the quarterly report on Form 10–Q for Marietta, for the first quarter of the fiscal year ended September 30, 1989, said quarter covering the months of October, November and December, 1988, and said report filed with the SEC on or about February 14, 1989, in violation of 18 U.S.C. §§ 2 and 1001.

Nadolski has been tried and convicted in the United States District Court for the

Northern District of New York on the above four violations of securities laws. In the same proceeding, Nadolski was tried and acquitted of one count of conspiracy to commit securities fraud in violation of 18 U.S.C. §§ 371 and 1001, and of one count of securities fraud in violation of 18 U.S.C. §§ 2 and 1001.

Plaintiff Rowe was, at all times leading up to the acquisition of American Soap Company (American Soap) by Marietta, the majority shareholder, Chief Operating Officer and President of American Soap. During 1987 and 1988, negotiations took place between Marietta and Rowe for the acquisition of American Soap.

On or about March 17, 1989, Marietta and Rowe entered into a stock and asset purchase agreement, whereby Rowe received $5,173,000.00 in cash, 350,100 shares of Marietta common stock, a $2,700,000.00 in Convertible Subordinated Notes payable in three (3) equal installments due in 1997, 1998 and 1999, or convertible into 180,000 shares of Marietta common stock after March 10, 1990, an employment agreement with Marietta, and a five (5) year earn out agreement based on Marietta's net earnings before interest and taxes (EBIT) in the non-core sale of glycerine, a by-product of the saponification process.

After the acquisition, Marietta conducted a public offering of its stocks and netted approximately $22,287,000.00. Nadolski, who sold approximately one-quarter of his Marietta holdings in the same public offering, netted $1,906,000.00. In the two years between the beginning of the first quarter of fiscal 1989 and the end of the third quarter of 1990, Marietta common stock rose in value from a low of $10¾ per share to a high of $26¼ per share.

During the fourth quarter of fiscal 1990, however, Marietta reported losses in income and earnings per share. By the close of fiscal 1990, Marietta stock fell below the $10 mark. Subsequently, it was revealed that Marietta Chief Financial Officer Thomas J. Blair had embezzled from Marietta approximately $400,000 over the course of his employment.

The court must apply the choice of law rules of the forum state, here, Tennessee. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). For tort claims, Tennessee has adopted the "most significant relationship" approach found in § 145 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) (RESTATEMENT). *Hataway v. McKinley,* 830 S.W.2d 53, 59 (Tenn.1992). Under that four-part approach, the court looks to:

(a) where the injury occurred;

(b) where the conduct causing the injury occurred;

(c) where the parties reside, are incorporated, and do business; and,

(d) where the relationship between the parties is centered.

*Id.* The court also looks to § 148 of the RESTATEMENT, which specifically addresses fraud and misrepresentation. Section 148 guides the court to inquire:

(a) where the plaintiff acted in reliance;

(b) where the representations were received;

(c) where the representations were made;

(d) where the parties resided or were incorporated; and,

(e) where performance was to be rendered under a contract the plaintiff was induced to enter.

In a prior order in this case, dismissing the negligent misrepresentation claim against the defendants, the court concluded that New York law should apply. Following the same logic, the court concludes that the underlying facts with respect to Rowe's fraudulent inducement claim are most significantly related to New York. New York law should apply to Rowe's fraudulent inducement claim.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly

establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986). The burden on the party moving for summary judgment "may be discharged by pointing out that there is an absence of evidence to support the nonmoving party's case." *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir.), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In short, the nonmoving party may not oppose a properly supported motion for summary judgment by mere reliance on the pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. "[I]n the 'new era' of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson*, *Celotex* and *Matsushita*, trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion must be granted." *Id.*

■ In order to prove fraud under New York law, the plaintiff must meet a high burden. *Richardson Greenshields Sec., Inc. v. Lau*, 819 F.Supp. 1246, 1264 (S.D.N.Y. 1993). Every element of fraud must be proved by clear and convincing evidence. *Id.; see also Leucadia, Inc., v. Reliance Ins. Co.*, 864 F.2d 964 (2nd Cir.1988); *Simcuski v. Saeli*, 44 N.Y.2d 442, 452, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978). The four elements to a successful fraud claim under New York law must be shown as to each defendant, clearly and convincingly, as follows:

(1) a material, false representation;

(2) intent to defraud;

(3) reasonable reliance on the misrepresentation; and,

(4) proximate causation of monetary damages.

*Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir.1987).

■ Rowe asserts that Nadolski's conviction on four counts of securities fraud serve to establish against the individual defendant the first and second prongs of the *Katara* test. Nadolski does not take issue with Rowe on this point, and nor does the court. Therefore, as to Nadolski, the court finds that his conviction on four counts of securities fraud satisfies the first and second prongs of the *Katara* test.

■ Notwithstanding the court's March 21, 1996 order denying collateral estoppel effect against Marietta, the fact remains that Marietta's President and Chief Executive Officer was convicted on four counts of securities fraud in relation to representations he made to the SEC. The material misrepresentations in Marietta's 10–Q's and 10–K's for the given time periods suffice to meet the first prong for Marietta. The court must then apply the law of agency to determine whether Marietta made the given material misrepresentations with intent to defraud, or scienter. The plaintiff maintains that Nadolski's conviction obviates the need to prove scienter on the part of Marietta because the agent's scienter is imputed to the employer. *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 446 (E.D.N.Y.1987). The general rule is that the agent's scienter is imputed to the principal when the agent had actual, apparent or inherent authority to make the mis-

representation. *See id.* Marietta claims that the general rule requiring the imputation of scienter from the agent to the corporate principal suffers an exception where the agent was acting adversely to the interests of the principal. Although the court acknowledges that Marietta has accurately defined the "adverse impact exception", *see American Nat'l Bank of Nashville, Tenn. v. Miller,* 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310 (1913), the court does not agree with the corporate defendant that a factual issue exists as to whether Marietta benefitted by the fraud of its CEO, who in signing the fraudulent 10–Q and 10–K forms was acting within the scope of his authority. The value gained in Marietta stocks between 1989 and 1990, and lost after public disclosure of the CEO Thomas Blair's embezzlement and the manipulations of Marietta's balance and income sheets, is so clearly attributable to the misrepresentations made in part by Nadolski that no reasonable trier of fact could reach the conclusion that the corporate defendant did not benefit from the overstatements of sales revenues, income and assets. *Cf. Alexander v. Evans,* 1993 WL 427409, at *11–12 (S.D.N.Y. Oct. 15, 1993). Even viewing the inferences drawn therefrom in the light most favorable to Marietta, the record is devoid of rebuttal evidence which would show Rowe's burden of production unmet. By the proffer of clear and convincing evidence which Marietta has failed to rebut, to-wit, the corporate defendant's own SEC filings, press releases and shareholder reports, and the deposition testimony of Marie de Lucia and Thomas Blair, Rowe has established that Marietta's stock prices and overall market position were positively affected by the overstatements. Marietta has failed to demonstrate the existence of a genuine factual issue as to whether it benefitted by Nadolski's fraud. Therefore, the court will impute scienter from Nadolski to Marietta. The second prong of the *Katara* test is met with regard to the corporate defendant.

■ At issue between these parties are *Katara*'s third and fourth prongs—reliance and proximate damages, respectively. The defendants contend that Rowe has failed to establish the nonexistence of any genuine issues of material fact concerning reliance and proximate damages. The defendants correctly posit that Nadolski's conviction on the four counts of securities fraud, *per se,* does not establish clearly and convincingly either that Rowe relied upon the misrepresentations or suffered proximate damages.

■ With regard to reliance, the defendants maintain that the essential terms of the acquisition were set out and agreed upon as early as October of 1988, and commemorated by a letter of intent signed by Rowe on December 22, 1988, well before February 14, 1989, the earliest date of criminal misrepresentation in the Nadolski conviction. Rowe attests that he relied on Nadolski's misrepresentations in the February 15, 1989 press release claiming an extra million dollars in sales and in the 10–Q filed on February 14, 1989. The parties signed the closing documents on March 17, 1989.

Rowe contends that the closing date of the acquisition, March 17, 1989, controls, because until that date there was no binding resolution upon Rowe to accept Marietta stock in partial consideration for the sale of his interest in American Soap. In parts of his deposition, Rowe attests that he reviewed and accepted as true the fraudulent 10–Q and 10–K forms which were bases for Nadolski's securities fraud conviction. It is established that the fraud complained of occurred prior to the consummation of a binding agreement between American Soap and Rowe on one side and Marietta and Nadolski on the other. The court finds the March 17, 1989 closing date controlling. *See* 37 AM.JUR.2d *Fraud And Deceit* § 241 (1968).

■ The defendants then posit that Rowe is not entitled to assert reliance where he had the opportunity and the obligation to investigate the corporate defendant's books with due diligence. The court dismisses as meritless this defense. It is axiomatic that in a case of deliberate and intentional fraud the fraud-feasor cannot plead the credulity of the victim as a defense. *People v. S.W. Straus & Co.,* 158 Misc. 186, 285 N.Y.S. 648 (N.Y.App. Div.1936). The court finds that, in these circumstances, Rowe had the right to rely on the representations of the defendants to the extent that he did.

■ Whether Rowe has proven that he did rely is, however, an entirely distinct determination. In order to succeed on his motion for summary judgment, Rowe must clearly and convincingly establish the reliance element of the *Katara* test for fraud. *See Lau,* 819 F.Supp. at 1264. The presumption of reliance found in the fraud-on-the-market theory in actions brought under federal statutes is unavailable to claimants under common law. *See, e.g., Antonson v. Robertson,* 141 F.R.D. 501, 508 (E.D.Kan.1991); *In re One Bancorp Sec. Litig.,* 136 F.R.D. 526, 532–33 (D.Me.1991); *Squitieri v. Gould,* 133 F.R.D. 25, 27–28 (E.D.Pa.1990); *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359 (D.Del.1990); *Katz v. Comdisco, Inc.,* 117 F.R.D. 403, 412 (N.D.Ill.1987); *Beebe v. Pacific Realty Trust,* 99 F.R.D. 60, 71 (D.Ore. 1983).

■ In conjunction with its determination of the *Katara* reliance prong, the court tests Rowe's proof on the issue of damages. In the instant motion, at issue is not the amount of damages, but whether Rowe has established to the satisfaction of *Katara,* 835 F.2d at 970–71, and *Lau,* 819 F.Supp. at 1264, that he was damaged proximately by the defendants' fraud. Rowe has pleaded two distinct areas of damage in his complaint:

(1) that, in signing the closing documents on March 17, 1989, Rowe was proximately damaged by his reliance on the defendants' fraudulent misrepresentations; and,

(2) that, in subsequent transactions of Marietta stock, Rowe was proximately damaged by his reliance on the defendants' fraudulent misrepresentations.

■ Rowe has presented sworn evidence that he relied on material misrepresentations in the fraudulent 10–Q and 10–K forms, as well as other misrepresentations made in Marietta press releases and at meetings in contemplation of the acquisition of American Soap, in his decision to sign the closing documents on March 17, 1989. Further, Rowe affirms that he relied on the same fraudulent misrepresentations in subsequent transactions of Marietta stock. In rebuttal, the defendants assert that Rowe, in bargaining for explicit contractual warranties against misrepresentation, evidenced an absence of reliance in the signing of the closing documents. The defendants cite no law to support their position, and the court recognizes that Rowe's breach of contract claims do not preclude his common law claim of fraudulent inducement. The tort is not merged in the contract. 37 C.J.S. *Fraud* § 64 (1943 and 1996 Supp.); *see Tyler Realties, Inc. v. Roper,* 17 Misc.2d 765, 183 N.Y.S.2d 888 (N.Y. 1959).

Rowe maintains that he has established reliance on the misrepresentations for which Nadolski was convicted, to the extent that he was induced on March 17, 1989 to sign the closing documents and in his later transactions of Marietta stock. The defendants assert that the evidence adduced by Rowe is insufficient to satisfy *Katara*'s "clear and convincing" standard, 835 F.2d at 970, and *Lau*'s high burden of production. *See* 819 F.Supp. at 1264. For the limited purpose of the instant summary judgment determination, the court finds that factual questions predominate. The issues of fact render this case improper for summary judgment determination. Under *Katara,* 835 F.2d 966, and other applicable law, Rowe has failed to establish clearly and convincingly, to the exclusion of genuine issues of material fact, that the defendants, through fraudulent misrepresentations, induced Rowe to rely, and that such reliance, if existent, proximately caused the plaintiff to suffer compensable damages.

For the foregoing reasons, after careful inspection of the record and applicable law, the plaintiff Donald M. Rowe's motion for summary judgment as to liability for fraudulent inducement is hereby denied.